[Civ. No. 5736. Third Appellate District.—March 29, 1937.]

RUBY CANVIN, Respondent, v. GENERAL BREWING CORPORATION (a Corporation) et al., Appellants.

Gerald M. Desmond for Appellants.

W. H. Hatfield, John L. Brannely and J. Oscar Goldstein for Respondent.

THOMPSON, J.—The plaintiff was seriously injured as a result of falling through an open trapdoor into the basement from the luncheon and beer parlor where she was employed as a waitress. Through the negligence of the truck driver of the General Brewing Corporation, which furnished liquor to the beer parlor, the trapdoor was left open and unlighted while he was delivering a barrel of beer to their customer at the ice-box in the basement of the building. This suit was brought against the brewing corporation and its truck driver only. The proprietor of the beer parlor was not a party to the action. A joint and several judgment was rendered against the defendants. From that judgment this appeal was perfected.

It is contended the evidence fails to support the finding that the plaintiff was injured through the negligence of the defendants. On the contrary, it is asserted the proximate cause of the accident was due to the negligence of the proprietor of the beer-hall in maintaining the dangerous trapdoor without adequate means of lighting it and without warning his employee of the peril. It is also claimed the plaintiff was guilty of contributory negligence, and that the court erroneously included in the amount of damages which she was awarded, a sum of money paid by an insurance company for her hospital and medical care.

Dominic Bradovich operated a luncheon and beer parlor at 1018 Eighth Street in Sacramento, called "Dominic's Drink Shop". He served sandwiches, light luncheons and beer to his customers. The room is 50 feet in length, with a bar and a counter along one side at which customers were seated. Along the opposite side of the room there is a series of booths. At the farthest end of the room there is a booth containing a table and chairs, where the waitresses were accustomed to put on their uniforms before going to work. This booth was poorly lighted. There was a small incandescent electric globe covered with a shade attached to the wall above the table. In the floor of this booth, to the left of the entrance, there is a 2½ by 3 foot trapdoor leading to the basement down a flight of very steep stairs. It was difficult to

distinguish the presence of this trapdoor when it was closed. It was raised by means of a hasp and rested against the partition wall of the booth adjacent to the entrance. When the trapdoor was raised it was concealed from the view of one entering the booth except for the few inches which extended beyond the casement. Directly above this trapdoor a telephone was attached to the wall. An electric light was also suspended from the ceiling over this trap, but it had not been burning for several days prior to the accident. The record contains evidence that the booth was quite dark in spite of the small light over the table.

Bradovich employed several waitresses who were kept extremely busy serving customers during the luncheon period. One witness called the place a "mad house" during meal times. The plaintiff was a young girl who had worked at that shop only a few days prior to the accident. Her hours of service were from 11 o'clock in the forenoon to 4 o'clock in the afternoon. She had never observed the trapdoor in the rear booth and did not know of its existence. She did not know that beer was taken to the basement by means of that door. She did not know the defendant Leslie and had never seen him conveying barrels into the basement.

The General Brewing Corporation had been supplying the Bradovich beer parlor with liquor regularly for many months. For four or five months Leslie, the truck driver of the brewing corporation, had been delivering barrels of beer almost daily to that place of business. It was the defendants' duty to place the barrels in the ice-box in the basement, which was located 50 feet from the foot of the stairway. The basement was unlighted and absolutely dark. Leslie followed the custom of rolling the barrels in the side entrance through the kitchen to the rear booth. He would then switch on the light which hung from the ceiling over the trap and raise the door, letting it rest against the partition. He then lowered the barrel step by step to the basement floor and rolled it forward to the ice-box, groping his way in the darkness, for there were no means of lighting the basement and he carried no flashlight. The trapdoor remained open while he completed that task. Three witnesses testified that Bradovich had repeatedly told Leslie not to deliver beer during the noon hour on account of the disturbance which it created and the danger incurred thereby.

Mr. Leslie testified that on September 7, 1934, at about 11:30 A. M. he asked the proprietor if he wanted some beer, and that he replied, "Yes, roll one in." He said that he then rolled a barrel in through the side entrance to the rear booth in the usual manner. He raised the trapdoor, but did not recall whether the electric light which hung from the ceiling was burning. He took the barrel down the stairway and was proceeding to roll it forward to the ice-box when he heard a scream, and turning about saw the plaintiff lying on the basement floor at the foot of the stairway.

The evidence is uncontradicted that the plaintiff, ignorant of the presence of the truck driver, or that the trapdoor in the rear booth existed, was engaged in serving customers from behind the counter, when the telephone in that booth rang. One of the waitresses told her to "answer the phone". She rushed back to do so. She knew the telephone was attached to the wall at the left of the entrance to that booth. The booth was inadequately lighted. The electric globe over the trapdoor was not lighted. She did not observe the trapdoor protruding beyond the casement of the door, and she did not see the open space. Reaching for the telephone as she entered, she plunged into the opening and fell headlong to the basement, fracturing her spine and sustaining numerous bruises and contusions. She was taken to the hospital, where she remained for some time, but apparently she never entirely recovered from her serious injuries.

The Aetna Casualty and Surety Company, which carried Bradovich's employer's casualty insurance, paid the plaintiff's hospital and medical bills amounting to $1424.91. This suit for damages was brought against the General Brewing Corporation and its truck driver only.

Bradovich was not made a party to the suit. The action was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff. A joint and several judgment for damages was rendered against the defendants for the sum of $6,424.91, in which it was provided that "out of said sum" the casualty company should "first be paid $1,424.91". From that judgment the defendants have appealed.

The evidence adequately sustains the finding that the General Brewing Corporation and its agent Fred Leslie were guilty of negligence in leaving the trapdoor open and unlighted for the period of time consumed in conveying the

barrel of beer a distance of 50 feet to the ice-box in an absolutely dark basement. It should have been reasonably anticipated that in the absence of the electric light which hangs from the ceiling of the booth directly over the trapdoor, any person who was not previously warned of the danger might step into the open space, particularly on account of the inadequately lighted booth due to the absence of the light over the trap which was not burning.

It also satisfactorily appears that this negligence on the part of the defendants was a proximate cause of the injuries which were sustained by the plaintiff as a result of falling into the unlighted trap doorway. Much space is consumed in appellants' briefs arguing that the proximate cause of the accident was the failure of the proprietor of the beer-hall, Dominic Bradovich, to maintain a safe way of conveying the beer barrels to the ice-box in the basement, and in neglecting to warn the plaintiff of the peril. It may be conceded for the purpose of this appeal, without so deciding, that Bradovich was also guilty of negligence which would have rendered him liable for damages. His liability would depend entirely on the question as to whether he should have reasonably anticipated that in the natural course of events some unwarned person was likely to step into the open trap and be injured thereby. (1 Shearman and Redfield on Negligence, 6th ed., 67, sec. 32.) But, even though it be conceded that Bradovich was guilty of negligence which became a proximate cause of the injuries sustained by the plaintiff, it does not necessarily follow that the defendants are therefore exempt for negligence which was also a proximate cause of the injuries. It is an established principle of law that negligence which establishes liability need not constitute *the only proximate cause of injuries*. It is a recognized principle that joint and several liability may attach to different individuals who are guilty of concurrent negligence. (19 Cal. Jur. 572, sec. 20; 45 C. J. 895, sec. 476; 1 Shearman and Redfield on Negligence, 6th ed., 64, secs. 31, 32.) In 45 Corpus Juris, at page 895, it is said:

"If the concurrent negligence of two or more persons combined together results in an injury to a third person, they are jointly and severally liable and the injured person may recover from either or all; the concurring negligence of one is no excuse or defense to another; each is liable for the

whole, even though another was equally culpable, or contributed in a greater degree to the injury."

A multitude of authorities supports the principle of liability of one or all persons who are guilty of concurrent negligence which contributes to the injuries sustained. It is a rule too well established to require further discussion.

Under the circumstances of this case, we are of the opinion the defendants are guilty of negligence which became *a* proximate cause of the injuries sustained by the plaintiff, as distinguished from *the sole and only* proximate cause of the accident, and that they are therefore liable for damages sustained as a result thereof.

The finding that the plaintiff was not guilty of contributory negligence is also sufficiently sustained by the evidence. Under the facts of this case the alleged contributory negligence of the plaintiff was a question for the determination of the judge who tried the case, with whose ruling upon that subject we may not interfere. The record contains substantial evidence that the plaintiff had been employed as a waitress in the beer-hall only a few days prior to the accident; she was unfamiliar with the means of conveying the beer barrels to the ice-box in the basement; she had never seen nor had her attention been called to the dangerous trapdoor; she did not know that it existed; she had not been warned of that peril; the booth in which the open trapdoor was left by the defendant was inadequately lighted; it was too dark to readily observe the opening in the floor; in the confusion of the noon hour when the waitresses were extremely busy serving luncheons, the telephone, attached to the wall directly over the trapdoor, rang; she was directed to answer the phone; she hastened to do so, and failing to observe the protruding door or the open trap, she fell to the basement and was injured. It was a question solely for the trial court to determine under the circumstances of this case whether a reasonably prudent person should have seen and avoided the trapdoor. We are of the opinion the trial court reached the proper conclusion regarding the plaintiff's alleged contributory negligence.

[4] The defendants may not complain of the fact that the findings, after specifically determining that the plaintiff suffered damages on account of their negligence in the aggregate sum of $6,424.91 and awarding her judgment for that amount, also provided in the judgment "that out of said sum

of $6424.91 the Aetna Casualty and Surety Company first be paid $1424.91''. The findings do determine that the surety company did pay plaintiff's hospital and medical bills on account of her injuries in the sum of $1424.91. These were legitimate expenses incurred by her on account of the accident, and were therefore properly included in the damages awarded to her. It is immaterial and harmless that the court held that she should repay the surety company from the judgment which she received. Certainly it is immaterial to the defendants what the plaintiff does with the money she receives in satisfaction of her judgment. It is contended that the court improperly awarded to Dominic Bradovich, the employer of the plaintiff, reimbursement for money necessarily expended on account of her injuries, pursuant to section 26a of the Workmen's Compensation Act (Stats. 1933, p. 1340), on the theory of subrogation of rights as therein provided. The judgment awards no damages to Bradovich. He was not a party to the action. The judgment specifically awards the entire sum of $6,424.91 as damages to the plaintiff. The statement that from that sum $1424.91 *is to be paid* to the Aetna Casualty and Surety Company is harmless to the defendants. So far as we are able to construe the record, the provisions of sections 26 and 26a of the Workmen's Compensation Act have no application to this case. It does not appear that an application was ever made on the part of either the employer or the employee to the industrial accident commission for compensation on account of the accident which is involved in this case. If such a proceeding occurred, we have no record of it, and it is not involved in this action. Section 26a of the Workmen's Compensation Act, upon which the appellants rely, reads as follows:

''If an injury to and/or the death of an employee is the proximate consequence of the act of a person other than the employer, the employer shall be entitled to recover from such person all moneys paid to the injured employee during the period of his disability and/or to his dependents either as salary, wage, pension or other emolument and in the recovery thereof, the employer shall be entitled to invoke all of the provisions of section 26 of this act.''

We are not informed that the plaintiff ever made any claim for compensation on account of the injuries which she sustained which are involved in this action, to either her employer or to the industrial accident commission. But if she

did it would not affect her right to full compensation from the defendants for her injuries sustained on account of their negligence. Section 26 of the Workmen's Compensation Act provides in that regard:

" . . . The claim of an employee for compensation *shall not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer; . . . "*

The preceding section provides for the right of an employer to prosecute a claim with the Industrial Accident Commission or to maintain an independent action against a third party who is liable for damages for injuries sustained by his employee to recover any money the employer was compelled to expend in behalf of his employee on account of such injuries. It also provides that the employer may join with the employee in an action or proceeding to recover such compensation. In the present action no such procedure occurred.

The preceding section, however, further provides that:

"If the employer has not joined in the action or has not brought action, or if his action has not been consolidated, the court shall, *on application of the employer,* allow as a first lien against the entire amount of any judgment for any damages recovered by the employee the amount of the employer's expenditures for compensation."

Assuming, without so deciding, that, upon application of the employer in this case, the court did allow the claim of the Aetna Casualty and Surety Company for compensation paid in behalf of the insured employer for necessary expenses incident to the plaintiff's injuries, as a lien upon the judgment which she recovered, that is not a matter which is detrimental to the defendants, or in which they have any interest. If there was any error in that proceeding it is harmless to the defendants. There is no merit in their attack upon the judgment in that regard.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.