### WILLIAM H. FANJOY v. DANIEL SEALES.

Who Liable for Injury caused by Defective Construction of Building.— The owner of a building, who has the same erected by a contractor, is liable in cases where an action can be maintained, for injuries sustained by another by reason of its defective construction, after he has accepted of the building from the contractor.

When Owner of Building not Liable for its Defective Construction.—The owner of a building, who has the same erected by a contractor, and accepts of the same when completed, is not liable for injuries afterwards sustained by one engaged in painting the same, resulting from the fall of the cornice caused by the painter suspending a staging to the cornice.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. P. Treadwell*, for Appellant.

The general principle of law applicable to the case is, that the owner and occupant of land, having the entire sole control of it, is liable for injuries occasioned to a person, without any fault on his own part, by suffering his premises to remain out of repair and in a state liable and likely to occasion such injury, as if any part of the premises, as a cornice, be "not fastened into the wall in the usual manner, or not fastened in a safe, proper, or secure manner, in point of fact." Such a case presents a technical nuisance. It is not necessary to allege or prove a *scienter*, or malice, or that the defendant himself originally created the nuisance; it is sufficient to show that, being the owner and having the entire control of the premises, he suffers them to remain in a state in which they are liable and likely to occasion injury to another, and that thereby the injury has occurred. *Sic utere tuo ut alienum non lædas* is the maxim he violates.

The well considered elaborate opinion in *Boswell* v. *Laird*, 8 Cal. 469, is in point here, and strongly supports the view taken. On page 498, the Court say: "If the injuries complained of had been occasioned after the completion of the dam by the contractors, and its acceptance by Laird & Chambers, there can be no doubt of the liability of the latter. Parties for whom work contracted for is undertaken, must see to it before acceptance that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests, and that it is sufficient. By acceptance and subsequent use, the owners assume to the world the responsibility of its sufficiency, and to third parties the liability of the contractors has ceased, and their own commenced." Here there was no evidence of negligence in building the dam, except that it gave way and broke in an unusual freshet; that was sufficient *prima facie* proof of negligence, as expressly decided in the case next to be cited.

In *The Mayor of New York* v. *Bailey*, 2 Denio, 433, the

subject is well considered, and a principle deduced which this Court, in *Boswell* v. *Laird*, declares to be founded in good sense. There the plaintiff recovered from the City of New York damages sustained by the breaking of the Croton dam, the city having accepted the work from the competent architect and builder after its completion by contract on the land of the city.

The *law* does not, in any case, I submit, excuse a nuisance because the damages resulting from it are sustained at the time the thing constituting the nuisance is " being used for a purpose for which it was not intended." Whether such use, for which the thing " was not intended," constitutes a want of proper care, and so relieves from a liability that might otherwise attach, is a question, not of law for the Court, but of fact for the jury.

*Porter & Holladay*, for Respondent.

The case of *Boswell* v. *Laird* is inapplicable. In that case the only point decided was that where a liability exists, the architects who erect the structure are liable until they have turned it over to the owner, and he has accepted of it.

This case presents a new and curious question—one upon which we have not met with any decisive authorities *pro* or *con;* and if this Court shall conclude to go behind the order granting a new trial, to examine the main question, it must be determined upon original principles of enlightened reason.

In reason there is a distinction between the case of a passer-by on the sidewalk who breaks his leg through the grating, negligently left fronting premises, and the case in hand, where the plaintiff's attention is called to the condition of the premises. In the latter case, the very fact of undertaking the painting or repair of the house, necessarily implies the exercise of the senses and judgment of the party as to the mode of mounting the building, and if injury follows the effort, *the law* imputes that injury to the carelessness or unskilfulness of the sufferer, and he is without recourse. He cannot be heard to

complain of injuries sustained in a matter to which his own senses and judgment were first invited into exercise. Not so with the passenger along the street who is injured by a falling fragment from a tottering wall, or by defective grating in the sidewalk. In this latter case it is the duty of the owner to keep his property safely, so that strangers shall not be injured thereby. But not so with the case at bar. His attention is first directed to the work upon which he is to be employed. He is then bound to look out for himself, and he has no insurer. In this case, plaintiff was employed to paint. Would it alter the principle had he been employed to repair or take down the cornice itself, which fell in the operation?


By the Court, CURREY, J.

This is an action on the case for damages consequent on injuries received by plaintiff through or by means of alleged negligence on the part of the defendant. The cause was tried before a jury, who rendered a verdict in plaintiff's favor for two thousand and five hundred dollars, on which judgment was entered. A new trial was granted on the defendant's application, and the plaintiff has appealed.

The case discloses that the defendant, the owner of a brick house in San Francisco, eleven feet front and two stories high, employed one Barry by contract to paint it. The plaintiff, a painter by trade, was employed, with others, by Barry, to perform the work of painting the house. These workmen of Barry, for the purpose of enabling themselves to do the work, suspended to the cornice of the house a staging or scaffolding. After the work was done, while in the act of taking down the scaffolding, the plaintiff stood upon the cornice, when the front wall to which it was attached broke away below the cornice. The cornice and a portion of the wall, and the plaintiff with the same, fell to the sidewalk, a distance of about thirty feet, by which his right arm was broken, besides which he suffered other serious bodily injuries, in consequence of which he was confined to his bed for several months and lost

his arm by necessary amputation. The plaintiff alleged in his complaint that the upper part of the front wall of the house and the cornice thereto attached were defectively and insufficiently constructed, and was on the part of the defendant wrongfully and negligently permitted so to be and remain while the house was being painted and when the plaintiff sustained the injuries mentioned. He also alleged that the fall of the wall and cornice and the injuries received by him were without fault or want of care on his part. The defendant by his answer traversed each and every allegation of the complaint, and for an affirmative defense alleged that he was not a mechanic; that he had the house and cornice constructed by master mechanics without supervision or direction on his part, except that the same were to be constructed in a substantial and workmanlike manner, and that any injury the plaintiff may have received by the fall or otherwise, was not from any fault, knowledge or negligence on the part of the defendant.

It was proved that the accident happened as before stated, and that by the fall the plaintiff was severely injured and was obliged to suffer the amputation of his right arm near the shoulder, and that as a consequence thereof he incurred a liability of three thousand dollars for medical and surgical service, of which he had paid about one hundred dollars.

On the part of the plaintiff the evidence tended to show that the house had been finished by the mechanics who built it, and accepted from them by the defendant about two months before the contract for painting it was made. That the cornice was not fastened to the front wall of the house in the usual manner or in a safe, proper or secure manner, in point of fact. That the fastening of the cornice was so concealed from view that it could not be seen, and that the plaintiff could not have ascertained the want of a proper fastening of the cornice without tearing down the wall. That painters usually go upon the cornice of such a house as the one in question in painting the house, and use the wall and cornice in the same manner as did the plaintiff in this instance, and that there was no want of care on his part and the part of

those engaged in the work with him in going upon the cornice, necessary to avoid the accident which occurred. That the defendant was about the building while it was being constructed and while Barry and his workmen, including the plaintiff were painting it, and saw how they were using the wall and cornice, and made no objection and gave no notice that the cornice was not of the usual strength of cornices, and that the same could not be used as was customary in such cases.

It was in evidence that the defendant was not a mechanic. On his part testimony was given tending to prove that the mason work of the house was done for him by contract, in writing, which contract was produced in evidence. That the contractors named in the writing, and who did the work, were experienced master masons, and that the defendant did not superintend or direct them in the execution of the work. That while the walls of the house were going up, the cornice, which was made of wood, was put in the wall by a competent carpenter, who was employed by the defendant by the day to perform that and other work, and who made and put up the cornice without any direction from the defendant as to the manner in which the work should be done. Two of the defendant's witnesses testified that cornices are intended for ornamental purposes, and that in their opinions the cornice in question was fastened sufficiently and was of sufficient strength for all practical purposes for which a cornice is intended.

If any one of the grounds assigned by the defendant for a new trial was well taken the order made granting it must be allowed to stand. The defendant specified several grounds as error, on account of which he asked the Court to vacate the verdict and grant a new trial. The first of these was that the Court erred in admitting certain evidence on the question of special damages, which we do not now propose to consider. The second, stated in general terms, was that upon the facts and circumstances set forth in the statement, as proved or admitted on the trial, and concerning which there seems to be no dispute, the verdict should have been for the defendant

instead of the plaintiff. We shall consider the case upon the second ground of error thus assigned, and on which the motion was granted.

The theory upon which the plaintiff proceeded was that the defendant was liable to him for the injury which he suffered, on the ground that the upper part of the front wall of the house and the cornice and its fastenings were so negligently and defectively constructed as to be insufficient and inadequate for the support of the painter's staging and the additional weight of such person or persons as were thereon while the house was being painted, and that the same were allowed so to be and remain when the accident described befel the plaintiff; and that it mattered not that the building was constructed by master mechanics without any directions from the defendant as to the work, except that it should be well and substantially done, or that he was ignorant, in fact, of the infirm and insufficient condition of the wall and cornice when the accident occurred.

The house was accepted by the defendant from the contractors some time before it was painted, and if at that time or afterward an injury, by reason of its defective construction, happened to any one for which an action might be maintained, the defendant is the person who would be answerable; for being the owner and having the control of the property, the law imposes on him the duty of maintaining it in such a condition as to occasion no injury to others who are without fault. In such case the doctrine of *respondeat superior* can have no application, because the relation of superior and subordinate did not exist when the accident happened. If the house was insufficiently built the defendant was not bound to accept it from those who had contracted to build it a substantial and workmanlike manner. By accepting it and allowing to remain in its then condition he assumed to third persons who might become concerned, its sufficiency for the uses and purposes for which it was constructed. (*Boswell* v. *Laird*,

8 Cal. 498; *The Mayor of New York* v. *Bailey*, 2 Denio, 445.)
We say for the uses and purposes for which it was constructed.
If the cornice had been so insufficiently fastened to the wall
when the defendant accepted the house as finished, as to break
away from it by its own weight, and in its fall had injured a
passer-by on the sidewalk beneath, there would be no doubt
in such case of the defendant's liability.    But that the case
under consideration is one of very different impression is man-
ifestly obvious.    Cornices are intended and constructed for
ornamental purposes, and not for the use to which the one in
question was put by the painters.    We are not satisfied that
the general custom of painters to use cornices for supporting
the stagings and platforms necessary for the prosecution of
their work of painting houses imposes on the owners thereof
the duty of constructing such cornices sufficiently strong to
sustain burdens for which they were not designed.

The Judge who tried the cause in his charge to the jury, told
them, very properly we think, that the plaintiff had no right
to expect that the cornice and the part of the wall to which
it was fastened were sufficiently strong to answer other pur-
poses requiring greater strength than those for which they
were designed, and for which they are ordinarily intended.
That it did not follow that cornices are constructed for the
purpose of suspending thereon stagings or platforms for paint-
ers and mechanics to work upon, because they may often be
used for such purposes; and also that if the cornice and wall,
though defective in construction, were still sufficient for the
purposes for which they were designed but were applied by
the plaintiff on his own responsibility for purposes requiring
greater strength than those for which they were intended,
and their fall was in consequence of such application, then no
negligence or breach of duty could be imputed to the defend-
ant on account of any such defect in their construction.

There is nothing in the case from which it can be inferred
that the defendant was aware that the cornice was not suffi-
ciently strong to endure the weight and strain to which it was
subjected by the painters because of any defect in its con-

struction.   If he could be rendered liable at all for the injuries which the plaintiff received, it must be because the law imputes to him a wrong of which he was not intentionally guilty—a wrong of which the law holds him guilty because he owned and had in his possession the building and suffered it to remain in a condition liable and likely to occasion injury to the plaintiff; who, in order to render the defendant liable in damages, it must appear was using the property in a lawful manner for a purpose to which it might properly be applied, and who, in and by the use which he made of it, was without fault on his part.

The learned Judge who granted the application for a new trial was of the opinion that the evidence did not justify the verdict, and on that ground made the order from which the plaintiff appealed.   We also are of opinion the verdict was not warranted by the evidence, and therefore hold that the order should be affirmed.

The order granting a new trial is affirmed.