[No. 8607. In Bank. — May 25, 1886.]

## FRANCIS J. KALIS ET AL., RESPONDENTS, v. F. K. SHATTUCK ET AL., APPELLANTS.

LANDLORD AND TENANT — LIABILITY OF LANDLORD FOR NUISANCE. — The owner of a building in the possession and control of his tenant is not liable for the consequences to a third person of a nuisance in connection with the building, unless the nuisance occasioning the injury existed at the time the premises were demised; or unless the building was in such a condition that it would be likely to become a nuisance in the ordinary and reasonable use for the purposes for which it was constructed and let, and the landlord failed to repair it; or unless he authorized or permitted the act which caused it to become a nuisance occasioning the injury.

ID. — IMPROPER USE OF BUILDING BY TENANT — INJURY TO THIRD PERSON. — The landlord of a building which is in the exclusive possession and control of a tenant is not liable for injuries to a third person by the fall of an awning belonging to the building, and constructed solely as a protection against the sun and rain, when the fall of the awning was occasioned by the negligent and improper conduct of the tenant in permitting it to be used as a standing-place for a crowd of people.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. C. Martin, Moore & Reed,* and *Sidney V. Smith & Son,* for Appellants.

*J. B. Lamar,* and *J. E. Foulds,* for Respondents.

McKEE, J. — Pauline Kalis, the wife of her co-plaintiff, while passing along the sidewalk in front of a building on the west side of Broadway, in the city of Oakland, received personal injuries from the fall of a wooden awning, which extended, with a slanting direction, from the second story of the building for about twenty feet over the sidewalk; and to recover damages for the injuries sustained, she brought the action in hand against "F. K. Shattuck, Maria Hillegas (administratrix of the estate of William Hillegas, deceased)," and seven other defendants, "for knowingly, negligently, and carelessly suffering the awning to remain rotten and insufficiently supported," in consequence of which, and of the "negligence and carelessness of the defendants in maintaining and using it in that defective condition," it fell upon the plaintiff while lawfully passing on the sidewalk, and inflicted upon her painful and permanent injuries.

On the trial of the case nonsuits were granted in favor of all the defendants except Shattuck and Maria Hillegas; against them a verdict and judgment for three thousand dollars were rendered, and from the judgment and an order denying their motion for a new trial they have appealed.

The statement of the case upon which the motion was heard and decided shows that the awning was constructed "about twelve years ago," by F. K. Shattuck and William Hillegas, who were owners of the building. Hillegas, being a tenant in common of the building, died in 1876. As constructed, the awning consisted of a piece

of two-by-twelve-inch timber bolted to the brick wall of the building with bolts which were bedded in the wall. From this, timber rafters, two inches by twelve inches, extended every twelve feet from the wall over the sidewalk, and were supported by turned posts, in front of which, and to receive the ends of the rafters, a piece of timber three inches by twelve inches was halved on the upper part of the posts, and spiked to them and to the rafters. Between the rafters there was laid a two-by-six-inch cross-rafter, which supported the awning covering, made from one-by-six-inch tongued and grooved boards. The awning had a pitch of twelve inches. There was no railing in connection with it; no doors or steps leading to it. The sole purpose of its construction was as a cover for the sidewalk from sunshine and rain.

The awning fell and injured the plaintiff on the 9th of September, 1880. As to the condition of the posts that supported it on that day there was a conflict in the evidence. But the evidence given on the part of both plaintiff and defendants tended to show that the awning fell, not from any inherent defect in its original construction, or from an unsound condition which rendered it unfit for the ordinary use for which it was constructed, but from an unreasonable and improper use of it for a purpose for which it was not constructed. For the uncontroverted facts are: That a great number of people were crowded upon it to witness the march of a public procession through Broadway; and they got on to the awning through a hall in the second story of the building to which it was attached. The hall was then occupied and controlled by a political club to whom it had been rented, and the janitor of the club permitted the public to go through the hall and out of the windows on to the awning, taking with them the chairs and benches of the hall. The lower story of the building was also at the time rented to different tenants in possession.

The exact time *when* the premises were demised to the

tenants in possession does not appear. The only evidence upon the question is the following by the defendant Shattuck: "Previous to the 9th of September, 1880, I leased the hall to the Republican Central Club of Oakland. From July to November, 1880, I had no control over the hall in any way whatever."

Nor is it made to appear by any evidence what was the condition of the awning at the time the building or any part of it was let to the tenants. The sole ground upon which the verdict and judgment seems to be founded is that the relation of landlord and tenant existed between the appellants and the occupants of the building, and that it was the duty of the landlords to prevent the fall of the awning, although the building was in possession of their tenants at the time. Therefore it is contended that they, as owners and landlords, are liable to the plaintiff for the consequences resulting to her from the fall of the awning.

But there is no proof that Maria Hillegas had any connection with the construction of the awning, or leased any part of the building, or claimed that those in possession were her tenants, or received any rent from any of them. In the complaint she is described as the administratrix of the estate of William Hillegas, deceased, who, in his lifetime, was co-owner with the defendant Shattuck of the building. But as she had no connection with the construction of the awning, had not demised any part of the building, never claimed that the persons occupying it were her tenants or received any rents from them, she cannot be said to have made herself, as administratrix or otherwise, in any way responsible for the continuance of the awning, even if it was a nuisance, or for the consequences to the plaintiff from its breaking down. As to her the verdict and judgment are therefore unsustained by the evidence. (*Oakham* v. *Holbrook*, 11 Cush. 303.)

As to the defendant Shattuck the only question is,

whether, as owner and landlord of the building, he is liable for the consequences to the plaintiff of a nuisance in connection with the building in the possession and control of his tenants.

It is well settled that a landlord is not liable for such consequences, unless,—1. The nuisance occasioning the injury existed at the time the premises were demised; or 2. The structure was in such a condition that it would be likely to become a nuisance, in the ordinary and reasonable use of the same for the purpose for which it was constructed and let, and the landlord failed to repair it (*Jessen* v. *Sweigert*, 66 Cal. 182; *Rector* v. *Buckhart*, 3 Hill, 193; *Mullen* v. *St. John*, 57 N. Y. 567; *Hussey* v. *Ryan*, 11 Cent. Rep. 626; Wood on Nuisances, secs. 295, 676; Wood on Landlord and Tenant, 918); or 3. The landlord authorized or permitted the act which caused it to become a nuisance occasioning the injury.

The rule of law on the subject is thus stated by the English courts: "To bring liability home to the owner of real property," says Crompton, J., in *Gandy* v. *Jubber*, 5 Best & S. 73, 485, "the nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not something which is capable of being thereafter rendered a nuisance by the tenant." "The nuisance," says Blackburn, J., in the same case, "must be, if I may so term it, a normal one." To the same effect will be found the law in cases in the courts of the United States.

In *Ourings* v. *Jones*, 9 Ind. 108, the defendant, a landlord, was held liable to the plaintiff for the consequences of an unlawful act, in the original construction of the sidewalk in front of the building, committed by him before he demised the building. The unlawful act was the making of a hole in the sidewalk, which he covered with a sufficient grating, but without obtaining the requisite license from the city authorities. The plaintiff fell through the hole and was injured, and the court held,

that although the premises were at the time of the accident in the possession of the defendant's tenant, the defendant was liable for the consequences of his unlawful act; and while it is true, says the court, if property not then a nuisance is demised, but becomes so only by the act of the tenant, the landlord is not liable, yet where the owner leases premises which are a nuisance, or must in the nature of things become so from their user, and receives rent, he is liable. On like ground, in *Bellows* v. *Sackett*, 15 Barb. 96, a landlord was held liable for injury from the drip from a roof *built of defective materials*, where the injury arose from the ordinary user of the premises. And in *Godley* v. *Hagerty*, 20 Pa. St. 387, S. C., 59 Am. Dec. 731, and *Carson* v. *Godley*, 26 Pa. St. 111, S. C., 67 Am. Dec. 404, a landlord was held liable for injuries from the fall of buildings defectively constructed for storage, for which purpose they had been let to tenants in possession. The liability of the owner was made to turn upon the question: "Did the landlord permit the buildings to pass from his possession *deficient* in some particular essential to their future safety, when reasonably used in the business and for the purposes for which they were constructed?" It was admitted that if a building constructed with ordinary care falls from the tenant's *misuse*, or if the tenant had ordered the construction, inspected and accepted it, then he alone would be liable for injuries from its fall. "But," say the court, "if the catastrophe results from *occult defect*, . . . . as if the materials be inferior, etc., the landlord, and not the tenant, would be liable. . . . . The wrong consisted . . . . in building and renting a store for a specific purpose, for which it was unfit."

So in *Swords* v. *Edgar*, 59 N. Y. 28, a lessor was held liable for injuries to a third person, caused by the fall of a wharf, which was unsafe and defective at the time he leased it, although it was in the possession of the tenant at the time of the accident.

But it is maintained that whatever may have been the time of the demise to the tenants in possession, the awning was a nuisance *per se*, because it was constructed over the sidewalk without license or leave of the corporate authorities, and without the sanction of the legislature. (Dillon on Municipal Corporations, sec. 521; Wood on Nuisances, sec. 502.)

That, however, is the assumption of a fact which nowhere appears in the case. No such issue was raised by the pleadings or proved at the trial. The complaint contains no allegation which expresses, or from which it could be implied, that the awning was constructed without license or authority; on the contrary, seemingly assuming that it had been lawfully constructed, liability for the injuries occasioned by its fall was sought to be enforced against the defendants on the sole ground of negligence on their part in suffering it to be in such an unsound and unsafe condition that it fell and injured the plaintiff. To the maintenance of that allegation, as the ground of her cause of action, all the evidence given for the plaintiff was directed. We must therefore presume that those who constructed the awning acted under authority of law.

Yet, even upon that assumption, the law would impose upon them the obligation to keep in repair what they were authorized to erect and maintain; and if they, by neglect, unskillfully constructed it or negligently maintained it, so that it was, or became, a nuisance, they would be answerable *civiliter* in damages to a person injured by their neglect to perform their obligation to properly erect and sufficiently maintain it. It was upon that principle that the plaintiff's cause of action was founded and tried.

But there was no such cause of action made out against the appellants; for there was no evidence that the awning was defectively constructed, or that it was in such a condition at the time of the demise of the building that

it constituted a nuisance, or would be likely to become such in the ordinary uses for the purposes for which the awning was constructed. On the contrary, it was shown by evidence, in which there was no substantial conflict, that the fall of the awning was attributable to an improper and negligent use of the awning by the tenant. It did not fall in consequence of the negligence of the owner to keep in repair, as in the cases of *Jessen* v. *Sweigert*, 66 Cal. 182, and *Burke* v. *Schwerdt*, 5 West Coast Rep. 880. It would not have fallen, if it had not been for the people that crowded upon it, by the permission of the tenant. It broke down because subjected to a weight too heavy for it to bear. Permitting it to be used in that way was the wrongful act which made of it a nuisance; and as a nuisance it was created by the tenant, and the tenant alone is liable; the landlord is not, unless he is shown to have participated in the wrongful act by authorizing or permitting it to be done. "A landlord," says the Supreme Court of Massachusetts, "is not responsible to other parties for the misconduct or injurious acts of his tenants to whom his estate has been leased for a lawful and proper purpose, when there was no nuisance or illegal structure upon it at the time of the lease." (*Saltonsal* v. *Baker*, 8 Gray, 195. See also *Mellen* v. *Morril*, 127 Mass. 545; *Leonard* v. *Stover*, 115 Mass. 86; Wood on Nuisances, pp. 79, 80, 142.)

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., MORRISON, C. J., MYRICK, J., SHARPSTEIN, J., and McKINSTRY, J., concurred.