[Civ. No. 6181. Third Appellate District.—August 25, 1939.]

HARRISON STRONG, a Minor, etc., et al., Respondents, v. CHRONICLE PUBLISHING CO. (a Corporation) et al., Defendants; WILLIAM C. McDUFFIE, as Receiver, etc., Appellant.

336

J. Hampton Hoge, Hoge, Pelton & Gunther, Murphy & Brownscombe, George W. Murphy and A. Dal Thomson for Appellant.

Keyes & Erskine and Clarendon W. Anderson for Respondents.

THOMPSON, J.—The defendant, William C. McDuffie, as Receiver of Richfield Oil Company, a corporation, has appealed from a judgment which was rendered against him pursuant to a verdict returned by a jury, for personal injuries received by the plaintiff who was struck by a revolving propeller of an airplane while he was attempting to accept delivery of packages of newspapers at the Santa Rosa Municipal Airport.

The appellant, as Receiver of the Richfield Oil Company, through its agent Cedric Musselman, was operating the Santa Rosa Municipal Airport near that city as a commercial enterprise for the accommodation of airplanes. The property consists of eighty-five acres of land upon which a gas station and tower with a beacon light are maintained adjacent to the highway, from which a forty-foot lane extends eight hundred feet to a hangar and the landing field. No fence or barriers separated the lane from the landing field. No signs were maintained to warn individuals against the danger of airplanes on the field. The hangar contained a staff from which a wind cone was constantly kept flying. The hangar was also equipped with two floodlights to illuminate the runway but the service wires had been cut or broken several days before the accident occurred and those lights were not operating at that time. Mr. Musselman was in charge of the gas station and airport, but he temporarily left the premises prior to the time of the accident and no agent of the company was then present at the field. For several years prior to the accident and thereafter airplanes were accustomed to land at that port both in the daytime and in the night-time for servicing and for commercial purposes. The general public was invited by the appellant to use the airport for those purposes. When airplanes landed at the field in the night-time, it was ordinarily the appellant's custom to light red lanterns along the margins of the landing field to indicate the boundaries of the runway, but on the night of the accident no such lights were displayed. The beacon light on the tower, however, was then burning.

On the night of June 14, 1934, the San Francisco Chronicle issued a special edition reporting the Baer-Carnera pugilistic fight. Mr. Johnson, the Santa Rosa distributor of that newspaper, employed the plaintiff, a twelve year old boy, to go with him to the Santa Rosa Airport to get the newspapers which were delivered by airplane from San Francisco at that place at 9:30 o'clock P. M. The boy had not previously visited the airport. He was not familiar with the dangers connected therewith. He had not been warned of the danger of entering the landing field or of coming in contact with the revolving propeller. The appellant's agent, Musselman, had left the premises without lighting the red lanterns along the margins of the runway. The floodlights were not burn-

ing. No warning signs were displayed on the premises. In the vicinity of the hangar where the airplanes stopped, the field was in darkness. No fence separated the lane from the runway. The airplane arrived and landed on the runway some distance from the hangar and taxied to a point near that building where it stopped. The ignition was then turned off, but the propeller continued to revolve for some time thereafter so rapidly that it was invisible. After the ignition had been turned off the noise of the revolving propeller was scarcely audible. The boy had not been warned of that danger. He did not see the revolving propeller. He testified that he thought it had stopped before he reached the vicinity of the airplane. Another bystander by the name of Squires also testified that the noise of the propeller had ceased and that he thought it had stopped revolving before the accident occurred.

When the airplane stopped, Mr. Johnson in company with the plaintiff ran toward it to take delivery of their packages of newspapers. Without a word of warning the plaintiff approached from the front of the airplane and the outer end of a revolving blade of the propeller, which he had not seen, struck him on the head, knocking him to the ground where he lay unconscious. He sustained a serious fracture of the skull. Slivers of bone penetrated the brain. Two operations were subsequently performed. A permanent condition of epilepsy followed as a result of the injury. The plaintiff is afflicted with periodical convulsions. A physician testified that his condition is incurable. The jury rendered a verdict against the appellant for damages resulting from his negligence in the sum of $8,812.93, which includes an item of $1312.93 as necessary medical and hospital expenses incurred as a result of the injury sustained. A judgment for that aggregate sum was accordingly entered. From that judgment this appeal was perfected.

The appellant contends the judgment is not supported by the evidence; that the Santa Rosa Municipal Airport was operated in all respects as similar standard airports of the same class are maintained and that the warning omissions complained of against the danger of approaching an airplane on the runway therefore do not constitute negligence; that the accident was due to the fault of plaintiff's employer in failing to warn him against the danger of coming in contact

with the revolving propeller; that the plaintiff was a mere licensee on the runway and that the injury sustained by the plaintiff was the result of his contributory negligence exempting the defendant from liability.

We are of the opinion the judgment is adequately supported by the evidence.

The plaintiff was at the airport when his injury was received as the invitee of the appellant and not as a mere licensee. ■ An invitee is one who enters upon the property of another person by either expressed or implied authority as when a customer enters a grocery store to purchase provisions. A licensee is a person whose presence is not invited but merely tolerated. (*Latham* v. *R. Johnson & Nephew*, 1 K. B. (Eng.) 398; 36 A. L. R. 37, note.) An invitation will be implied when one visits the premises of another for a purpose which is of mutual benefit to both parties and not as the mere caprice or for the sole pleasure of the visitor. It is true that one may be an invitee upon certain portions of the premises of another person for a proper purpose, and yet he may become a mere licensee on other portions of the property, dependent upon the particular circumstances of the case. (*Medcraft* v. *Merchants Exchange*, 211 Cal. 404, 407 [295 Pac. 822] ; *State Compensation Ins. Fund* v. *Allen*, 104 Cal. App. 400, 413 [285 Pac. 1053].) ■ In the present action the plaintiff was on the runway of the airport as the employee of Mr. Johnson for the express purpose of receiving delivery of packages of the San Francisco Chronicle which were brought and landed on the public airport by an airplane according to custom by the implied invitation of the appellant. The airport was maintained for the purpose of receiving and discharging both passengers and merchandise. The delivery of the newspapers at that time and place was for the mutual advantage of both the plaintiff and the appellant, and therefore the presence of the plaintiff should be construed to be that of an invitee. The numerous authorities on that subject which are cited by the respective parties to this action are not in conflict with what we have previously said and it is therefore unnecessary to analyze them.

Since we are convinced the plaintiff was an invitee on the premises of the appellant at the time he received his injury, it follows that the instructions to the effect that the appellant was bound to exercise reasonable care in providing a safe

place and operating facilities of the airport for the protection of such invitees were properly given to the jury. They were not erroneous or prejudicial.

 The appellant insists that the employer of the plaintiff, who took him out to the landing field and failed to warn the boy of the danger of the revolving propeller, is guilty of negligence and wholly responsible for his injuries. Conceding, without so deciding, that Mr. Johnson was guilty of negligence in that regard, that fact would not relieve the appellant from liability for injuries sustained as a result of his negligence even though it concurred with that of another person. It is a recognized principle of law that joint and several liability may attach to different individuals who are guilty of concurrent negligence. (19 Cal. Jur. 572, sec. 20, 45 C. J. 895, sec. 476; *Canvin* v. *General Brewing Corp.*, 20 Cal. App. (2d) 49, 54 [66 Pac. (2d) 691].)

 The appellant contends that since the expert evidence of his witness, Edison Mouton, is uncontradicted to the effect that all airports similar to the Santa Rosa Municipal Airport, which is classified by the United States Department of Commerce as "B-4-X", are maintained and operated without attendants, warning signs, floodlights or barriers to prevent free access to the flying field, *his testimony is conclusive.* Many cases are cited in support of that theory.

We are directed to no evidence of the witness, Mouton, which warrants the sweeping declaration contended for by the appellant. He did so testify with respect to floodlights and possibly regarding some other customs affecting the operation of similar standard airports belonging to the classification referred to. But he did not specifically include all of the alleged acts and omissions of negligence relied upon by the respondent. The witness did testify that Santa Rosa Municipal Airport was classified by the federal government as "B-4-X". We are directed to no evidence of the required regulations of such a class of airports. It was a mere conclusion of the witness to assert that other similarly classed airports were maintained and conducted in all respects in the same manner that this one was managed. Moreover, there is affirmative evidence in this record that the Santa Rosa Municipal Airport was equipped with floodlights which were frequently used; that it was the custom to light red lanterns along the margins of the runway for the landing of airplanes

at night; that Cedric Musselman, the employee of the appellant was usually in attendance at the field when airplanes landed; that the defendant advertised and the official classification of the Santa Rosa Municipal Airport specified that it was equipped with "landing-area floodlights, servicing facilities day and night"; that airplanes were accustomed to land on that field in both the day and night time, but that on the night when the accident occurred the floodlights were not burning; that he left the station without lighting the red lanterns along the runway, and he was not present at the time of the accident. There is therefore a substantial conflict as to just what regulations of this airport were required or followed under the circumstances of this case.

Assuming that the expert witness, Mouton, who is the president of a California aviation corporation, did testify that all other airports of a similar class were operated in the same manner in which the Santa Rosa Municipal Airport was conducted, that evidence is not conclusive of the appellant's freedom from negligence. It is true, as some of the cases cited by appellant declare, that under proper circumstances, evidence of custom of the use of other similar standard equipment and instrumentalities in the same locality may be shown to aid the jury in determining whether the acts or omissions complained of actually constitute negligence. (2 Jones Commentaries on Evidence, 2d ed., p. 1275, sec. 685.) Many reputable authorities, however, hold that such evidence is not conclusive, even though it may be undisputed. No California case, and none from other jurisdictions which have been called to our attention, hold that such evidence is conclusive on the subject of negligence. We think the correct statement of the law in that regard is concisely declared in 1 Shearman & Redfield on Negligence, sixth edition, page 22, section 12a, as follows:

"The custom of others engaged in the same pursuit, though generally admissible in evidence by either party as tending to show negligence or the contrary, *is not conclusive.*"

The foregoing text is supported by numerous authorities, among which is *Martin* v. *California Central Ry. Co.*, 94 Cal. 326, 332 [29 Pac. 645].

It has frequently been said the test determining the presence or the absence of negligence is not what others have done in that regard, but, rather, what would a reasonably prudent

person do under similar circumstances. (*Wolfsen* v. *Wheeler*, 130 Cal. App. 475, 483 [19 Pac. (2d) 1004]; 19 Cal. Jur. 581, sec. 25.)

We conclude that the record contains substantial proof of the negligence of the defendant in failing to provide for reasonably prudent means of warning the plaintiff against the danger of coming in contact with the propeller of the airplane, and that the evidence regarding the method of operating similar standard airports is not conclusive of the appellant's freedom from negligence under the circumstances of this case. The question of the appellant's negligence was a matter for the determination of the jury under all the facts and circumstances of this case. (*Pignet* v. *City of Santa Monica*, 29 Cal. App. (2d) 286 [84 Pac. (2d) 166].)

Likewise the question of the alleged contributory negligence of the plaintiff was a problem for the determination of the jury under the circumstances of this case. The plaintiff knew nothing of the manner of landing an airplane or the danger of coming in contact with the propeller until it ceases to revolve. He had been given no warning and the danger of the revolving blades of the propeller was not obvious. He could neither hear nor see them revolving. He testified in that regard:

"Q. After the plane landed, what did the plane do? A. Well, it taxied to the runway and stopped . . . and the motor was cut. Q. While it was taxiing, up the runway what did you do? A. I was going in a dog trot toward it. . . . Q. Were you approaching it from the front or from the side? A. From the left hand side. . . . Q. When the plane came to a stop, did you hear any noise? A. I heard the ignition turned off. Q. Previous to the time the ignition (was) turned off, was the plane making any noise? A. Yes. Q. After the ignition was turned off, did it make any noise? A. Not that I remember. Q. At the time the plane ceased making noise about how far from it were you? A. About fifteen or twenty feet. . . . I was to the side of it. . . . To the left hand side of the airplane. Q. What did you do after the noise stopped? A. I came on walking right on up to the airplane. Q. Could you see the airplane itself? A. Well just a vague outline of it, dim outline. Q. Could you see any details of it? A. No. . . . There were no lights on the airplane at all, from the automobiles. Q. As you approached

it after this noise was turned off, did you see the propeller? A. *You couldn't see the propeller, it was dark."*

Mr. Squires corroborated the plaintiff in his statement that the revolving propeller could neither be seen nor heard after the ignition was turned off. He said:

"Q. Did you hear the motor stop, the noise stop? A. I did hear the noise of the motor stop. Q. After that noise stopped, will you tell us what then occurred? A. Well, when I knew the motor stopped, that he had cut off his ignition and cut off his motor, I went over towards the plane, but I was just a little ways from the plane when I heard a terrible ping, . . . just a real thud or a ping and I saw the form of what I thought was a boy fall to the ground. . . . Q. Did you see the propellers? A. No, I didn't see the propellers."

Mr. Welch also testified regarding the same matter:

"Q. There was a motor running at the time it (the airplane) came to a stop? A. Right. . . . Q. And then that noise stopped? A. Right. . . . Q. Could you see the propeller? A. No, I couldn't see the propeller. Q. Was the front of the plane dark? A. Extremely dark, yes it was obscured, as a matter of fact. . . . I couldn't see the propellers."

The last witness testified that the airplane was in comparative darkness when it stopped on the runway; that it had no lights except the small red and green clearance lamps on either side; that the floodlights of the airport were not burning; that there were no red lanterns along the margins of the field; that no warning signs were displayed on the premises, and that no attendant of the airport was present when the accident occurred. There is ample evidence to support the implied finding of the jury that the plaintiff was not guilty of contributory negligence.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 23, 1939.