[Civ. No. 12333.   First Dist., Div. Two.   July 23, 1943.]

WILLIAM LEENDERS, Respondent, v. CALIFORNIA HAWAIIAN SUGAR REFINING CORPORATION, LTD. (a Corporation), Appellant.

Myrick & Deering and Scott and James Walter Scott for Appellant.

John A. Foley, Jack Flinn and Leo H. Shapiro for Respondent.

DOOLING, J. pro tem.—Plaintiff recovered judgment for personal injuries, after a jury trial. On appeal defendant's principal claim is that the evidence is not sufficient to support the verdict and judgment. There is little conflict in the evidence since defendant produced only two witnesses, a medical witness whose testimony was limited to evidence of the extent and character of plaintiff's injuries, and a maker of maps and diagrams whose testimony was concerned exclusively with a description of the premises where plaintiff's injuries were incurred.

From the evidence introduced by the plaintiff it appears that on July 7, 1941, the S. S. Malama was engaged in unloading a cargo of sugar at the "Bankers Warehouse" owned and operated by defendant at Crockett, California. Plaintiff was working as a stevedore employed by the steamship company in this work of unloading. The Bankers Warehouse is a wooden structure over 50 years old which for several years had not been used by defendant for unloading or storing sugar. It consists of a pier or wharf at least 550 feet long covered by a sloping roof open on the water side and supported by posts set approximately 14 feet apart. Between the outer edge of these posts and the edge of the wharf along

the water there is a strip of wharf about three feet wide which is not covered by the roof.

In unloading a cargo it is the practice of the stevedores to set up a table consisting of planks placed upon wooden horses. This table, where as here the cargo is being discharged onto a roofed-over pier, is set as close to the waters edge as possible to avoid contact between the cable which delivers the cargo to the pier and the edge of the roof. On the day in question the ship was moored so that its number three hatch was opposite an opening or bay, between two of the uprights supporting the roof, which was obstructed by a mooring bitt consisting of wooden piles extending above the surface of the wharf and set back some distance from its edge. This bitt interfered with the setting of the landing table toward the water side of the wharf so that the table extended only about one foot outside of the edge of the roof. Along the roof's edge above this bay there was a face board consisting of a wooden plank 2 inches thick and 10 inches wide fastened to the structure by iron bolts about ½ inch in diameter. In unloading the cargo it was brought from the ship's hold in a sling at the end of a steel cable operated by a power driven winch. Each load weighed about 1600 pounds. The loads were lowered to a point slightly above the edge of the table without touching the roof or face board and then it was necessary for two stevedores standing on the table to draw the load manually under the roof so that it could be deposited on the table. In doing this the cable was drawn against and scraped along the face board.

The face board was observed by the foreman of the stevedores to have old scratches or gouges on its surface, apparently made by the scraping of unloading cables against it at some earlier time. The sugar was delivered by the stevedores from the table to trucks and the trucks were then taken by employees of defendant who hauled the sugar away and stacked it. The work of unloading at this particular bay commenced at 8 a. m. on July 7, 1941. About 10 a. m. that morning two carpenters or millwrights came to the bay and the work of unloading was halted while they nailed up a diagonal cross piece, between one of the uprights and the beam supporting the edge of the roof, which had become loosened. About 3:30 p. m. as a load was being delivered to the table

one end of the face plank tore loose from its bolts and swung down striking plaintiff on the face and head. This end of the face plank ''was rotten. Lots of rotten pieces. When it hit Mr. Leenders there was a few rotten pieces left on the table there from the plank. . . . This end was rotten (indicating), around the bolt it was rotten. . . . The end that fell down was rotten.''

Defendant's evidence showed that there were approximately 17 bays where there were no bitts to interfere with setting a table so that the landing cable would not come in contact with the edge of the roof.

■ Plaintiff, being employed by an independent contractor to deliver goods to the wharf of defendant, was as to the defendant an invitee on its premises, (*Hinds* v. *Wheadon,* 19 Cal.2d 458, 460 [121 P.2d 724] ; *Burke* v. *John E. Marshall, Inc.,* 42 Cal.App.2d 195 [108 P.2d 738] ; *Buckingham* v. *San Joaquin Cotton Oil Co.,* 128 Cal.App. 94 [16 P.2d 807] ) to whom the defendant was under a duty to use ordinary care to furnish him a safe place in which to work.

Defendant does not dispute this as a general principle of law, but seeks to take this case out of the general rule on a number of grounds.

The principal ground urged by defendant to take the case out of the general rule is thus stated in defendant's opening brief:

''While there is a duty to keep the premises safe for all uses by an invitee which are within the scope of the invitation, the owner is not bound to keep them safe for uses outside the purpose and scope of the invitation for which the property was not designed, and which could not reasonably have been anticipated.''

In support of this statement defendant cites: *Fanjoy* v. *Seales,* 29 Cal. 243 ; *Baddeley* v. *Shea,* 114 Cal. 1 [45 P. 990, 55 Am.St.Rep. 56, 33 L.R.A. 747] ; *Kalis* v. *Shattuck,* 69 Cal. 593 [11 P. 346, 58 Am.St.Rep. 568] ; *Kauffman* v. *Maier,* 94 Cal. 269 [29 P. 481, 18 L.R.A. 124] ; *Gribben* v. *Yellow Aster etc. Co.,* 142 Cal. 248 [75 P. 839] ; *Slyter* v. *Clinton Const. Co.,* 107 Cal.App. 348 [290 P. 643] ; *Fountain* v. *Willard-Slater Co.,* 172 Cal. 129 [155 P. 630] ; *Scott* v. *George A. Fuller Co.,* 41 Cal.App.2d 501 [107 P.2d 55] ; and a number of cases from other jurisdictions. It will serve no useful purpose to

discuss the facts of these several cases. It will be sufficient to concede that they all, on a variety of facts, support the rule set out in the sentence quoted from defendant's opening brief, but in none of them does it appear, as here, that the owner of the premises was present and actively cooperating with the invitee in the particular use of the premises involved in the injury to the plaintiff. The basic question presented by this argument of defendant is whether on the evidence in this case the jury was bound as a matter of law to find that the use of the premises made by plaintiff's employer was, to requote a portion of the above quoted language, "for uses outside the purpose and scope of the invitation . . . and which could not reasonably have been anticipated." To put the matter affirmatively, if the evidence will support a finding that the steamship company was invited by the defendant to use this particular bay for unloading of part of its cargo with knowledge on the defendant's part that in so doing the landing cable must scrape the face plank as each load was drawn inward to the table by the stevedores, then defendant would be under a legal duty to use ordinary care to see that the face plank was secure and strong enough to withstand such usage.

In the solution of this question of fact the jury was entitled, if its judgment so dictated, to draw every reasonable inference favorable to plaintiff's case from the evidence presented. It was also entitled to find, if the evidence warranted, that an invitation was implied by the defendant's conduct. (19 Cal.Jur. 619.) The jury in this respect had the following pertinent facts before it: the face plank bore old scars indicating that other ships had in the past week unloaded at this bay; the employees of defendant were continuously receiving the sugar from the stevedores as it was unloaded at this bay; and at 10 a. m. two carpenters or millwrights made repairs to the structure of this bay at a time when it was actually in use for unloading. From these facts the inference could reasonably be drawn that the use of this particular bay was at least at the implied, if not at the express, invitation of defendant. The further fact probably did not escape the attention of the jury that defendant, which had it in its power to produce evidence, if it existed, to rebut this reasonable inference, chose rather to rest on the supposed weakness of plain-

tiff's case and produced no witness from among its own officials or employees in authority at the Bankers Warehouse at the time of the accident or present when it occurred.

The failure of a party to produce evidence presumptively in his power to produce will support the inference that such evidence if produced would be unfavorable to his case. (*Bone* v. *Hayes,* 154 Cal. 759, 765 [99 P. 172]; *Perry* v. *A. Paladini, Inc.,* 89 Cal.App. 275, 281 [264 P. 580]; II Wigmore on Evidence, 3d ed., sec. 285, p. 162 and sec. 289, p. 171.)

The jury was entitled to find as reasonable inferences from the evidence produced that defendant expressly or impliedly invited the steamship company to unload at this particular bay; that defendant knew that the cable must scrape the face board; and that it was negligent in allowing a rotten board to be subjected to this use.

Defendant's claim that the negligence of the steamship company was the sole proximate cause of the fall of the face board is based upon cases of which *Hayden* v. *Paramount Productions, Inc.,* 33 Cal.App.2d 287 [91 P.2d 231] is typical. In that case a crane was accidentally brought into contact with a high tension wire over forty-five feet in the air by a plaintiff who knew the position of the wire and its dangerous voltage. Here the face board before its fall appeared sturdy to the observation of the foreman of the stevedores, and the jury was entitled to find an invitation by defendant to use it in the manner in which it was actually used. The cases are not at all parallel; and even were the steamship company also negligent it would still present a case of concurrent negligence which would be no bar to a recovery by the steamship company's employee. (*Strong* v. *Chronicle Pub. Co.,* 34 Cal. App.2d 335, 340 [93 P.2d 649]; *Dobbie* v. *Pacific Gas & Electric Co.,* 95 Cal.App. 781 [273 P. 630].)

Defendant argues with much vigor that the continual "pounding" of the cable with its heavy load was such that even a sound face board could not have withstood it. This is an argument on a question of fact which might well be, and probably was, made to the jury. It is supported by no direct testimony in the record. We are in no position to hold as a matter of law that a sound face board 2 inches thick fastened to the structure by heavy iron bolts could not withstand the scraping of a chain against it which supported a load that could be handled manually by two men, particularly in the

face of evidence that a rotten board withstood it for a period of several hours.

■ The fact that there were at least seventeen bays where the cargo could have been unloaded without the cable coming in contact with the shed was only one element to be considered by the jury in determining what inferences were to be reasonably drawn from the evidence. The jury having resolved the evidence against defendant, we may not reweigh it. Our function is limited to a determination of its sufficiency to support the verdict.

■ Defendant is in no position to urge error in any of the instructions given by the court. The burden is on an appellant to present a record on appeal which will support his claims of error. Defendant has presented a transcript which fails to show at whose request any of the instructions were given and it must be presumed in support of the judgment that the instructions complained of were given at defendant's request. (2 Cal.Jur. 870.)

■ A medical witness for plaintiff after testifying that the tear duct of one of plaintiff's eyes had been so injured that it did not carry off the water from his eye, testified that such a condition would result in an abnormal accumulation of bacteria in the eye and that in the event of the eye being scratched in the future the presence of these germs might cause an infection or an ulcer which could impair the patient to a great extent or even result in the loss of the eyeball. This is attacked as speculative. Defendant in this attack overlooks the distinction between the general competency of evidence and its sufficiency to support a particular finding. The fact that plaintiff had been physically impaired so as to increase the possibility of future infection in the eye was a proper matter to be considered by the jury in determining the extent of his present and permanent injury. The jury could not properly award him damages on such evidence on the theory that such infection with its attendant results was reasonably certain to occur. It could take into consideration the actual impairment of his eye which permanently decreased his resistance to infection with all the results that might be attendant thereon. The size of the verdict does not indicate that the jury awarded damages on the theory that it regarded the future impairment of plaintiff's eyesight or the loss of his eyeball as reasonably certain. The distinction

between the competency of such evidence and its probative effect is elaborately discussed in *Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 163 et seq. [108 P.2d 989]; *Cordiner* v. *Los Angeles Traction Co.,* 5 Cal.App. 400 [91 P. 436]; and II Wigmore on Evidence, 3d ed., sec. 663, pp. 776-7.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied August 21, 1943, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1943.