Hillsborough,
No. 5395.

### DONAT JOLICOEUR v. JOHN T. CONRAD, JR.

Argued October 6, 1965.
Decided October 29, 1965.

*McLane, Carleton, Graf, Greene & Brown* and *Jack B. Middleton* (*Mr. Middleton* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (*Mr. Paul E. Nourie* orally), for the defendant.

DUNCAN, J. The principal injury suffered by the plaintiff consisted of a severe comminuted fracture of the upper third of his left leg, described as a "subtrochanteric" fracture of an oblique type with "complete displacement of the shaft of the femur inward . . . and a large butterfly fragment lying in between." The fracture was repaired by surgical procedures involving insertion of three metal guide wires, a Smith Peterson nail, and a Thornton Sidebar attached by six metallic screws.

On his discharge from the hospital on March 4, 1961, the plaintiff had some drainage from the area of his injury which

soon ceased. However he was readmitted to the hospital on December 5, 1961 for treatment of an abscess which formed on the inner aspect of his left thigh. Discharged from the hospital on December 23, 1961, he was readmitted on March 16, 1962 at which time all of the metal was removed from his leg, together with a "lipoma the size of a pullet's egg," and his condition was then diagnosed as "chronic suppurating osteomyelitis." The plaintiff returned to work on May 12, 1962, and continued to work to the time of trial.

At the trial the orthopedic surgeon who attended the plaintiff following his injury testified that X-rays taken in January 1965 showed the fracture to be well healed, but that he could not say one way or the other that the plaintiff probably would or probably would not be troubled with osteomyelitis in the area of the fracture in the future. He testified: "While I feel that he is in good shape, and he is in good shape, I or no one else can make a guarantee that he couldn't drain again."

The defendant's motion to take from the jury any consideration of "osteomyelitis as it may exist in the future" was made at the close of the evidence, and granted after counsel for the plaintiff had argued that he was "not aware a 50-50 situation with respect to a recurrence . . . is beyond the scope of the matters that a jury may consider under these circumstances," and that "it is an element that the jury can consider in assessing damages."

The instruction to the jury to which the plaintiff excepted was given as a part of the charge on damages and was as follows: "You will not award anything on the basis of any future osteomyelitis, since the doctor said he could not tell whether the plaintiff would have that in the future."

In support of his exceptions, the plaintiff argues that susceptibility to future injury or to a recurrence of past disability is an element of damages which a jury is entitled to consider, even though there is no evidence that future injury or recurrence is probable. *Ramsdell* v. *Company,* 86 N. H. 457. See *Rogers* v. *Nelson,* 97 N. H. 72; *Leenders* v. *Cal. Hawaiian &c. Corp.,* 59 Cal. App. 2d 752, 759-760.

It is well settled in this jurisdiction, as the plaintiff recognizes, that there can be no recovery for future damages unless there is evidence from which it can be found to be more probable than not that they will occur. *Dunham* v. *Stone,* 96 N. H. 138; *Emerson* v. *Company,* 87 N. H. 108; *L'Esperance* v. *Sherburne,* 85

N. H. 103, 110. The instruction in the case before us that the jury should not award anything on the basis of any future osteomyelitis was no more than an application of the settled rule. The plaintiff's exception to it, as a "withdrawal of the issue of the 50-50 chance of osteomyelitis," was not calculated to inform the Court that he considered that it infringed upon any right to have the jury consider the evidence as proof of a present susceptibility to recurrence of infection. Nor did the instruction require the jury to disregard the expert testimony that such a recurrence might or might not occur. If the plaintiff considered that some clarification of the instruction was necessary for the protection of his rights, it was incumbent upon him to request it. *Bank* v. *Ferguson,* 58 N. H. 403; *Pitman* v. *Merriman,* 80 N. H. 295, 299; *Coos Lumber Co.* v. *Builders Supply Co.,* 105 N. H. 323. As was said in *Leenders* v. *Cal. Hawaiian &c. Corp., supra,* the general competency of the evidence was to be distinguished from its sufficiency to support a particular finding. "The jury could not properly award him damages on such evidence on the theory that such infection . . . was reasonably certain to occur." *Id.,* 759.

The plaintiff's remaining exception is to the denial of his motion to set the verdict aside because the damages were inadequate. The plaintiff was an experienced truck driver, employed at the time of the accident in operating large trailer-trucks for Mutrie Transportation Company. His injuries incapacitated him for a period of a year and fifteen weeks. He resumed his previous employment on May 12, 1962, and thereafter continued at work up to the time of the trial, at a higher rate of pay than he had been receiving before the accident. When injured, he was fifty-one years of age, and his life expectancy at the time of trial was 19.2 years.

His convalescence from the fracture and its repair was painful and arduous, and punctuated by return to the hospital on two occasions with osteomyelitis. His medical and allied expenses aggregated $4,230.52 and his loss of wages was a minimum of $8,484.21. The plaintiff argues that although the verdict of $18,000 "may seem at first blush to be a handsome sum," the allowance of only $5,285.27 for past and future pain and suffering, for a permanent partial disability of the left leg, and for future loss of earning capacity, is in fact so "miserly and miserably inadequate" as to compel the conclusion that the jury have not performed their duty, as defined in the charge of the Court. *Doody* v. *Railroad,* 77 N. H. 161, 165.

500

While a plaintiff is entitled to fair compensation by a verdict which is not "niggardly" (*Roy* v. *Amoskeag Fabrics,* 93 N. H. 324, 326), the verdict in this case does not so closely parallel that returned in *Hadley* v. *McLaughlin,* 100 N. H. 497, relied upon by the plaintiff, as to require like relief. In contrast with that case, by denying the motion to set aside the verdict the Justice who presided at this trial and saw and heard the witnesses impliedly found that the weight of the evidence was not such as to make it apparent that the jury failed to consider the evidence intelligently or properly, or that it was misled. *Wisutskie* v. *Malouin,* 88 N. H. 242, 246. We cannot say that this conclusion by the Trial Court was unreasonable as a matter of law, and therefore we are not at liberty to disturb it. *Id.,* 246; *Roy* v. *Levy,* 97 N. H. 36, 39, 40. *Cf. Gomes* v. *Roy,* 99 N. H. 233.

*Exceptions overruled.*

All concurred.