**CURTISS–WRIGHT FLYING SERVICE, Inc., v. WILLIAMSON et al.**

No. 2698.

Court of Civil Appeals of Texas. El Paso.
June 23, 1932.

Rehearing Denied July 14, 1932.

S. Webster Tull, of Baltimore, Md., and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Willis & Madden and Thompson, Knight, Baker & Harris, all of Dallas, for appellees.

HIGGINS, J.

This is a suit by the surviving wife and minor children of Henry F. Williamson, deceased, to recover damages for the death of said Williamson which it is alleged was caused by the negligence of the appellant. Judgment for $25,000 was rendered in the plaintiff's favor, and the defendant appeals.

The deceased was a passenger in a plane flying from Dallas to Abilene and return. Upon arrival at the flying field near Dallas, on the return trip, the plane landed and taxied to a point near the hangar and stopped to discharge its passengers. In the hangar were the waiting and rest rooms provided for the convenience and comfort of appellant's customers and passengers. Passengers frequently passed through the hangar in leaving the field, though it was not necessary for them to do so. When the plane stopped the propeller continued to revolve. This it always does whether the fuel supply to the motor be cut off or not. If the fuel supply be checked the propeller ceases to revolve in a short time—perhaps in about one or two minutes. Upon the occasion in question the fuel supply was not cut off as it was intended for the plane to again take to the air. The propeller was idling but revolving with a rapidity sufficient to prevent it being plainly seen.

The plane faced north when it halted and to the east of the entrance to the hangar. The doors of the plane were on its east side. It would be necessary for a passenger alighting from the plane and desiring to enter the hangar to pass around the rear or front of the plane.

When the plane halted, Leroy Luckey, an employee of defendant, opened the door to permit the passengers to alight. Williamson was the second passenger to get out. He was anxious to reach a rest room. Upon alighting he turned immediately to the north, ducked under a rod supporting the wing on that side, and started to go around the front end of the plane. He took but two or three steps when he came in contact with the rapidly revolving propeller and sustained injuries which caused his death in a short time.

Upon special issues it was found:

1. That at the time and on the occasion in question the airplane in which Williamson was riding was brought to a stop facing in a northerly direction, and it was negligence so to do.

2. The defendant was negligent in permitting the deceased to alight from its airplane while the propeller was still in motion.

3. Defendant failed to warn deceased of the danger of coming in contact with the propeller of the airplane and was negligent in failing so to do.

4. Defendant's employee, Leroy Luckey, could have discovered the danger of the propeller striking Williamson in time to have warned him of such danger, and Luckey's failure so to do was negligence.

5. The failure of defendant to provide a guard rope to the airplane for the purpose of protecting passengers from coming in contact with the propeller at the time and on the occasion in question was negligence.

6. Defendant failed to have an employee charged with the affirmative duty of conducting passengers from the airplane to an exit provided for passengers, and such failure was negligence.

7. Williamson's death was not an unavoidable accident.

Further findings were made that the negligence of the defendant in each of the respects above stated proximately caused the accident to and resulting death of Williamson.

It was further found that Williamson was not guilty of negligence in any of the particulars submitted by the court, to wit:

1. In failing to keep that lookout for his own safety which a reasonably prudent person would have kept under the same or similar circumstances.

2. In stooping down and going under the strut of said airplane and into its propeller.

3. In failing to pass to the rear of said airplane on the occasion in question.

4. In failing to walk a sufficient distance from the door of said plane after alighting therefrom to be entirely clear of the strut of the plane before attempting to change his course or direction.

5. In leaving the airplane in such haste that he could not be warned of the danger of coming in contact with the propeller.

6. In failing to discover and avoid contact with the propeller of said plane.

The verdict assessed the damages at $25,000, apportioning same among the plaintiffs.

Appellant questions the sufficiency of the evidence to support the finding that it was negligence on the part of appellant to stop the plane facing in a northerly direction, in that there was no legal reason why it was negligence so to do.

■ The deceased was a passenger upon appellant's plane, and the latter owed to Williamson the exercise of that high degree of care for his safety which under the settled rules of law apply under such circumstances. It was appellant's duty to furnish Williamson a safe place to alight and a safe egress from its plane to the hangar where he desired to go. If for any reason it was unsafe to appellant's passengers for the plane to be stopped opposite the hangar and facing north, the issue of negligence in so doing was one of fact for the jury.

With the plane facing north and its door opening to the east, it was necessary for the deceased, upon alighting, to pass to the rear or in front of the plane, in order to enter the hangar. On the north end of the plane the propeller was revolving rapidly and constituted a highly dangerous agency. If the plane had been facing south, as the evidence shows they were usually faced when they halted to discharge passengers, Williamson could and would have gone direct from the plane to the hangar and there would have been no danger of coming in contact with the propeller.

■ But when the passengers were caused to alight upon the east side of the plane the revolving propeller became a potential danger to every passenger who alighted and who for any reason desired to go from the plane to the hangar. This danger was directly due to the fact that the plane was facing north and the stopping of the plane so facing raised an issue of negligence. 2 Hutchinson on Carriers (3d Ed.) §§ 928–1117 and 1122; 2 Moore on Carriers (2d Ed.) pp. 1095, 1098, 1099, 1124 and 1231; Montgomery St. Ry. Co. v. Mason, 133 Ala. 508, 32 So. 261; Chicago Terminal Transfer Ry. Co. v. Schmelling, 197 Ill. 619, 64 N. E. 714; Mobile Light & Ry. Co. v. Walsh, 146 Ala. 295, 40 So. 560; Simmons v. Ry. Co., 41 Or. 151, 69 P. 440, 1022; Sowash v. Traction Co., 188 Pa. 618, 41 A. 743; Keefe v. Ry. Co., 142 Mass. 251, 7 N. E. 874; Falk v. Ry Co., 56 N. J. Law, 380, 29 A. 157; Ft. Worth & D. C. Ry. Co. v. Davis, 4 Tex. Civ. App. 351, 23 S. W. 737; Houston & T. C. Ry. Co. v. Smith (Tex. Civ. App.) 32 S. W. 710; Mize v. Ry. Co., 15 Ga. App. 265, 82 S. E. 925; McGovern v. Ry. Co., 136 Iowa, 13, 111 N. W. 412, 13 L. R.

A. (N. S.) 476, 125 Am. St. Rep. 215; Murray v. Electric Co., 50 Wash. 444, 97 P. 458; Bradley v. Ry. Co., 106 N. J. Law, 51, 147 A. 572; Griswold v. Ry. Co., 339 Ill. 94, 170 N. E. 845; Gulfport & Mississippi Coast Traction Co. v. Raymond, 157 Miss. 439, 128 So. 327; Malzer v. Transportation Co., 108 N. J. Law, 296, 156 A. 639; St. Louis Southwestern R. Co. of Texas v. Woodall (Tex. Com. App.) 207 S. W. 84; Gott v. Ry. Co. (Mo. Sup.) 222 S. W. 827.

■ Appellant also questions the sufficiency of the evidence to support the other findings of negligence made against it. There is no occasion to discuss these findings and the evidence relating thereto. In our opinion the evidence supports each of them. If some, or even all, of these additional findings are without proper support in the evidence, the error would be harmless, for the first finding discussed above shows actionable negligence and supports the judgment. Other objections urged against the form in which these issues were submitted are regarded as without merit. If any of these objections are well founded, the error is harmless for the reason above indicated.

With respect to the defense of contributory negligence, appellant complains of the refusal of a peremptory instruction in its favor which it asserts should have been given because the evidence shows the deceased was guilty of contributory negligence as a matter of law in stooping down and going under the strut of the plane and into its revolving propeller.

By other assignments appellant asserts the adverse findings upon the various issues of contributory negligence are contrary to and unsupported by the evidence.

In this connection railroad crossing and other cases are cited and discussed, but they have no application to the present facts. The general rules of law which they announce are well settled and need not be restated.

The deceased was not an experienced traveler by air. Prior to his death he had made two short flights, one over Meachum Field at Fort Worth and one over Love Field at Dallas, and the trip to Abilene and return. He, of course, must have appreciated the danger of coming in contact with a rapidly revolving propeller.

The evidence, viewed in its aspect most favorable to the deceased, may be summarized as follows:

The appellant's airplane was stopped facing in a northerly direction in violation of its custom, thereby making it necessary for passengers to pass around the plane in order to reach the company's office, rest room, and passenger exit.

When it stopped, Mr. Luckey (operations manager of appellant) opened the door and invited the passengers to alight from the plane.

If the passengers had been held until the propeller stopped, approximately two minutes' time would have been consumed.

Appellant's employees failed to warn Williamson of the danger of coming in contact with the propeller.

When Luckey opened the door of the airplane, he stepped toward the rear of the plane—an effective direction to passengers to pass around the front of the plane.

At the time of the accident the plane was at a standstill; the motor and propeller were idling and the noise incident thereto was very slight.

An airplane passenger after several hours in the air is subject to nervousness, air sickness, and temporary impairment of hearing. The propeller, even when idling, is going so fast it is hardly visible. The witness Bartholomew testified: "A rope was provided by the company for use when there was a crowd of people around and it was sometimes used where there were a large number of passengers. When we were hopping passengers which involved a large number of people we always used a rope to prevent anyone from coming in contact with the propeller."

■ Upon the facts thus reflected there is in our opinion no reason for not applying the general rule prevailing in this state that the issue of negligence vel non is one of fact for the jury to determine.

Under the circumstances, it is wholly inadmissible to say the deceased was guilty of negligence as a matter of law.

■ The sixteenth assignment complains of the refusal to submit requested issue No 3, which reads: "Were the risks and dangers of coming in contact with the propeller on the occasion in question open, obvious and apparent?"

The issue was evidentiary upon the ultimate issue of contributory negligence and for this reason was properly refused.

■ The award of damages in the sum of $25,000 is attacked as excessive. The evidence shows the deceased was a capable business man earning $2,500 to $3,000 annually. He was in good health, 44 years of age, with a life expectancy of 25.27 years. The award is not excessive. Rio Grande, E. P. & S. F. Ry. Co. v. Dupree (Tex. Civ. App.) 35 S.W.(2d) 809–815; Paris & G. N. Ry. Co. v. Stafford (Tex. Civ. App.) 36 S.W.(2d) 331; St. Louis Southwestern Ry. Co. v. Larkin (Tex. Civ. App.) 34 S.W.(2d) 693; Texas Electric Ry. Co. v. Ins. Ass'n (Tex. Civ. App.) 9 S.W.(2d) 185.

Various assignments complain of argument by counsel for appellees in addressing the jury. Some of the argument is not subject to criticism. Possibly some of it was not within the limits of strict propriety, but

there was nothing of an inflammatory nature in it, and there is no reason to believe it had any improper influence upon the jury. The matter presents no error of a reversible nature.

Affirmed.