MARY C. MOON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF VERNIE E. MOON, DECEASED, PLAINTIFF-APPELLANT, v. NATHAN E. LEWIS AND DONALD LEWIS, DEFENDANTS-RESPONDENTS.

Submitted February 14, 1936—Decided May 14, 1936.

For the plaintiff-appellant, *Charles Stockdell Gray* (*John F. Ryan,* of counsel).

For the defendants-respondents, *Abe J. David.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of nonsuit entered in favor of the defendants in the Union Circuit of the Supreme Court.

Plaintiff's intestate, Vernie E. Moon, met his death while engaged in the act of aiding the defendant Donald Lewis to start the motor of an aeroplane. Moon was an employe at the Westfield Airport, where the accident occurred, and it was part of his duty to aid the flyers in starting the motors of the various aeroplanes. The defendant Donald Lewis, a student flyer, was sitting in the pilot's seat in the cockpit of his father's (the defendant Nathan E. Lewis) aeroplane awaiting the arrival of the flying instructor, and in the meantime, endeavoring in co-operation with Moon, who was on the ground in front of the aeroplane, to start the motor so as to warm it up, and it was while thus engaged, the propeller of the aeroplane struck Moon on the head causing his death.

This suit is brought to recover damages for the pecuniary loss suffered by the widow and next of kin of said Vernie E. Moon, and the plaintiff, as administratrix *ad prosequendum*

of his estate, alleges that his death was caused by the negligent starting of the propellor blade by the defendant Donald Lewis.

Two expert witnesses were produced by the plaintiff, who testified as to the methods used in starting motors of aeroplanes. They testified that one method is the "compression" method, as follows: The pilot takes his seat in the cockpit of the plane and the mechanic or assistant by hand slowly turns the aeroplane propellor, which operation serves to draw some gasoline into the cylinders of the motor. At a certain point he feels resistance caused by compression and when he considers that the propellor blade is in the proper position, he steps back out of danger and then signals to the pilot with the word "clear." The procedure then requires the pilot to answer with the same signal, then to turn on the ignition switch and at the same time to crank the "booster" or generator. The other method, known as the "contact" method, is the same as the first up to the point where the mechanic or assistant puts the propellor on compression, whereupon he steps back and then signals to the pilot with the word "contact." It is then the duty of the pilot to answer with the same word, to turn on his ignition switch, whereupon the mechanic upon hearing the signal "contact" from the pilot, steps forward, places his hands on the propellor blade and pulls it downward. The "contact" method does not involve the use of the so-called booster.

The charge of negligence against the defendant Donald Lewis is that on two occasions he and Moon acting in concert attempted to start the motor by the "compression" method and this having failed, Moon thereupon determined to resort to the "contact" method and that while he had given Lewis the signal for the "contact" method, which required Moon to reach up and take hold of the propellor blade, while he was in the act of doing so, Lewis, instead of following the signal, negligently, and while Moon was in a position of danger, resorted again without warning to the "compression" method and succeeded in starting the motor causing the propellor to turn and strike Moon as he was reaching for it.

Unfortunately for the plaintiff, her proofs failed to establish the allegations of her complaint.

The only persons present at the time of the accident were the decedent, Moon, the defendant Lewis, and Stanley Splick, a young man employed at the Westfield Airport as a student mechanic. He had, sixteen days after the accident, signed a written statement (*Exhibit P-1* for identification), wherein among other things he stated that Lewis and Moon tried to start the motor on the booster (that is, by the "compression" method), but failed and as he (Splick) came away he saw Moon trying to turn the propellor over and heard him yell "contact" (that being the signal for the "contact" method), and heard the motor sputter, and as he (Splick) turned around, saw the propellor hitting Moon on the head. When called as a witness for the plaintiff, however, he was unable to remember what transpired on the third attempt to start the motor. While the plaintiff's attorney, alleging surprise, made strenuous efforts by the use of Splick's written statement to refresh his memory so that he would testify on the witness stand to the facts as set forth in the written statement, yet these efforts were futile, and the net result of Splick's testimony was that when the accident happened, he was forty feet away, facing the opposite direction, and that he didn't see the accident and had no recollection of what was said or done by Moon or Lewis in connection with the fatal third attempt to start the motor.

Inasmuch as plaintiff's case was based upon the alleged negligence of the defendant Donald Lewis in using the "compression" method when Moon gave the signal for the "contact" method, it is obvious that if there was no proof of this fact there was nothing from which the jury could find or infer negligence. Plaintiff, faced with this situation, called upon the defendant Donald Lewis to testify on her behalf, and his testimony was that on the third attempt, as in the other two, the "compression" method was called for by Moon and used by both of them, and that when Moon called "clear," he, Lewis, called "clear," and turned on the switch and cranked the booster, that the propellor kicked two or three times and

went dead, that Splick came running from the hangar toward him but continued toward the front of the plane calling Moon—that Lewis then jumped out and ran around to the front of the plane and saw Moon lying on the ground.

Lewis' testimony in no way supported the allegations of negligence made by the plaintiff. On the contrary, it furnished positive proof that he had acted in full conformity with the method of procedure and degree of care described as customary and proper by the plaintiff's expert witnesses.

Counsel for appellant insists, however, that the court erroneously refused to admit in evidence the written statement (*Exhibit P-2*) made by the witness Splick; that this statement, coupled with the admissions of Splick on the witness stand was competent to prove that the signal which Splick heard Moon give Lewis was "contact," and was sufficient to raise a jury question as to the negligence of the defendant Lewis.

Our examination of the testimony of Splick indicates to us that such "admissions" as he made, consisting as they did, of "beliefs" and "probabilities," were completely nullified by his positive and repeated declarations that he did not remember what the signal was and that he did not know whether the signal was "clear" or "contact." The statement itself, of course, was not competent as proof of the facts stated therein.

"Where a party is 'surprised' by adverse testimony of a witness called by him, the trial court may in the exercise of its sound discretion permit him to offer proof of self-contradictory statements previously made by such witness for the purpose, not of proving the truth of such statements, but to 'discredit' or neutralize the effect of such adverse testimony. The trial court will upon such request, and should without request, limit the effect of such proof to this purpose." *State* v. *D'Adame,* 84 *N. J. L.* 386.

Had the court allowed the statement, *Exhibit P-2,* in evidence, its only value would have been to neutralize the testimony given by the witness Splick; it could in no manner establish a cause of action. Splick's testimony, if neutralized by the admission of such statement, would have been of no

evidential value and would have the same effect as if he had never taken the stand and testified. It would not have established any negligence on the part of the defendants for the jury to consider.

Under those circumstances, the only other testimony in the case having direct bearing on the allegation of negligence was that of the witness Donald Lewis, which was positive in its character as to lack of negligence.

Assuming, however, without deciding, that it was error to refuse to admit the statement in evidence, yet it was harmless error, and it is a well known rule, needing no citation of authorities, that harmless error is not reversible error.

The remaining grounds of appeal argued by appellant have to do with the trial court's sustaining objections made by the defendants to two questions propounded by plaintiff to the witness Splick, referring to *Exhibit P-2.* The first question was—"isn't it your belief now to-day that this accident happened the way it is indicated in that paper?"

The second question was—"and what is the explanation of the statement as signed by you on that day?"

"The control of examination, both direct and cross. resides in the trial judge so that the proofs may be kept within reasonable bounds * * *.

"In this respect, a trial court is vested with a wide discretion and this court will not interfere with the exercise of such discretion * * * unless there has been an abuse or a most unwise use thereof." *Stein* v. *Goodenough, 73 N. J. L.* 812.

We are unable to see how the appellant was in anywise injured by the exclusion of the above questions.

There being no reversible error in the record, the judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.

*For reversal*—None.