## Stewart, Appellant, *v.* Loughman.

Argued March 21, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ,

*W. Robert Thompson,* with him *G. Ashton Brownlee, Joseph C. Spriggs* and *Montgomery, Thompson & Baily,* for appellants.

*John I. Hook, Jr.,* with him *Scott and Hook,* for appellee.

OPINION BY MR. JUSTICE JONES, May 21, 1951:

This appeal is from a final order of the court below refusing to take off a compulsory nonsuit. The action was instituted by the minor plaintiff, acting by his father as his natural guardian, and by the father and mother in their own right to recover damages for personal injuries suffered by the minor through the alleged negligence of the defendant.

The injuries in suit were sustained by James W. Stewart, the minor plaintiff, when he stepped from the leading (front) edge of the wing, of an airplane and was struck by the revolving propeller. The plane was owned by Dennis J. Loughman, the defendant, who was the proprietor of a passenger and freight transport business which he conducted under the fictitious name of W.P.L.E. Air Transport. The plane was based at the Greene County airport near Waynesburg, Pennsylvania, and Harley E. McVay was employed by the defendant as its pilot. At the time of the accident, the plane was being operated by McVay as a common carrier for hire. The plaintiffs base their action on McVay's alleged negligence for which they sought to hold Loughman liable under the rule of respondeat superior.

The defendant assigned four reasons in support of his motion for a compulsory nonsuit, viz., (1) that McVay was not acting within the scope of his employment at the time of the accident, (2) that the plaintiffs failed to establish negligence on the part of the defendant, (3) that there was no causal connection between any act or conduct of the defendant or his servant and the injuries to the passenger and (4) that the minor plaintiff was guilty of contributory negligence as a matter of law.

In entering the nonsuit, the trial court relied solely on the fourth of the above-specified reasons as did also the court en banc in refusing to remove the nonsuit. Nor need we now, in appraising the action of the lower court, consider more than the question of the minor plaintiff's alleged contributory negligence. The evidence in the case was sufficient to support a finding by the jury that, in taking the minor for a plane ride as a passenger for hire, McVay was performing a duty within the scope of his employment and that the flight was a normal one. As was observed by this court in *Orr v. William J. Burns International Detective Agency*, 337 Pa. 587, 592, 12 A. 2d 25,—"It may be added that 'Since

the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment': *Simmons v. Pennsylvania R. R. Co.*, 199 Pa. 232, 238." The jury could also have justifiably found from the evidence that McVay was negligent in his management of the plane and that his negligence was the proximate cause of the injuries in suit. By statute in this State (Act of May 25, 1933, P. L. 1001, Art. IV, Sec. 406), "The liability of the owner or pilot of an aircraft carrying passengers, for injury or death to such passengers, shall be determined by the rules of law applicable to torts on the lands or waters of this Commonwealth arising out of similar relationships." And, it is well established that a land or water carrier for hire owes to his passenger "the highest degree of care and diligence" both in transporting him and in enabling him "to alight safely": *Hughes v. Pittsburgh Transportation Co.*, 300 Pa. 55, 58, 150 A. 153. Or, as stated in *Hager v. Philadelphia & Reading Railway Company*, 261 Pa. 359, 362, 104 A. 599,—"It is the duty of a common carrier of passengers to exercise the highest practical degree of care and to afford them a safe means of ingress and egress to and from the car or other vehicle of transportation: Mack v. Pittsburgh Rys. Co., 247 Pa. 598, 602," Without reciting the evidence in detail, it was sufficient to support a finding that McVay did not exercise the degree of care required of him in the circumstances.

Coming, then, to the question of the passenger's contributory negligence, the pertinent facts and reasonable inferences therefrom, taken in the light most favorable to the plaintiffs, are as follows. On a Sunday afternoon in September, McVay, the pilot, his wife and her broth-

er, James Stewart, the minor plaintiff, drove out to the airport. McVay intended to take up passengers in the airplane for sightseeing trips. Mrs. McVay and her brother, who was then sixteen years old, had gone along to the field to watch the flying, but, on the way there, James decided to take a ride. He had never been up in an airplane before and was anxious to fly over his home in an adjoining county. He paid the established price ($7) for a thirty-five minute flight. It so happened, however, that the pilot used up part of the time of the trip in deviating from the intended course for his own purposes and convenience. In order to compensate the passenger for the time so lost, McVay agreed to take him up again for a short ride later in the day. In view of this arrangement, which there was testimony to support, the learned court below invaded the jury's province when it concluded that the second flight, on which James was a passenger, "was made for which no compensation was paid by the minor plaintiff." The fact is that McVay took James up for the obligated second flight which was to be the last flight of the day. Upon landing from that flight, McVay headed the plane toward the hangar where it was to be kept for the night. To get from the landing area to the hangar, it was necessary to taxi the plane over the car-parking area where several automobiles were parked at the time in such a way as to block the plane's ground course to the hangar. McVay brought the plane to rest headed in the direction of the parking area. It was evening time and toward dusk. He did not shut off the engine which was turning the propeller at idling speed of from 500 to 1,000 revolutions per minute. Nor did he warn his passenger that the engine was still running. James started to alight from the plane, intending to have the obstructing cars moved. He stepped from his seat onto the right wing of the plane, went forward and either jumped or fell off the wing into the propeller.

In adjudging the minor plaintiff guilty of contributory negligence as a matter of law, the learned court below made point of McVay's testimony that there was a sign on the wing in red letters reading, "Dismount at rear". However, there was no evidence as to the size of the letters or as to how visible they were; and the court attached no significance to McVay's further testimony that "They were trampled over quite a bit." The principal ground upon which the court below based its summary action was an assumption that, had the passenger availed himself of his senses of sight, hearing and feeling, he would have seen, heard and felt the movement of the engine and propeller. In this connection, the appellee stresses the following testimony of the witness, McVay,—"Q—In other words, anyone that would be in the plane or about ready to get out would be liable to observe first, the vibration of the plane, secondly, the back wash of the propeller, and third, would be able to hear the engine, is that correct? A—I think so." But, that indefinite answer did not unmistakably conclude the matter of the passenger's knowledge as is evident from the same witness's further testimony,—"Q—Now from your experiences as a pilot, when . . . the propeller is in idling . . . what can you see when you look straight into it? A—If the sun is shining you can see a blur . . . . Q—And on this occasion what would it be possible to see? A—Well, normally you couldn't see anything." At the time of the accident "it was on towards dusk and the sun was down." As to the passenger's ability to hear, the testimony was that, after such a flight, one's sense of hearing is usually affected by "a ringing in your ears . . . for a time." And, when the witness was asked how much slip stream (i. e., air backwash) one usually gets from an idling propeller, he replied, "Not much" and that "It wouldn't be too great at idling speed . . . ." McVay did say that engine vibration at idling speed is noticeable. But, at most, that was a matter of degree

and, since it was explained no further, whether the passenger was aware, or should have been aware, that the engine was running and the propeller revolving was for the jury to say. Under the evidence in the case, it was possible for the passenger to have used his senses and still not have perceived that the propeller was in motion.

A compulsory nonsuit was unwarranted. As we said in *Kimble v. Wilson,* 352 Pa. 275, 277, 42 A. 2d 526,— "A nonsuit may be entered only in a clear case. If there is doubt of the inferences that may be drawn from the oral evidence, it must be submitted to the jury." In other words, the pertinent facts must so indisputably appear in the plaintiff's case that reasonable minds cannot differ as to their meaning and implications before entry of a compulsory nonsuit is justified: see *Sargeant v. Ayers,* 358 Pa. 393, 397, 57 A. 2d 881; also *Virgilio v. Walker and Brehm,* 254 Pa. 241, 244-245, 98 A. 815. It is, of course, a plaintiff's burden to make out a case of negligence on the part of the defendant free from negligence of the plaintiff: *Grimes v. Yellow Cab Co.,* 344 Pa. 298, 305, 25 A. 2d 294; *Husvar v. Delaware, Lackawanna & Western Railroad Company,* 237 Pa. 295, 297, 85 A. 366. But, it is not incumbent upon a plaintiff to establish affirmatively that he exercised due care in the circumstances. On a question as to the appropriateness of a compulsory nonsuit on the ground of contributory negligence, "the pertinent inquiry is whether the plaintiff's negligence appears so irrefutably from the evidence in his own case that to permit a jury to absolve him in the circumstances would be to elevate caprice over legally conclusive fact": *Sargeant v. Ayers,* supra, at p. 397. That the plaintiffs in the instant case were entitled to go to the jury on the question of the defendant's negligence, the record leaves no doubt. Whether they were free of contributory negligence involved issues of relative and comparative facts which only a jury could rightfully resolve. There is no arbi-

trary legal standard whereby the court could say in view of the testimony that the passenger did not use his senses or, if he did, he must have seen that the propeller was in motion.

Order reversed with a procedendo.