Dorothy ATCHESON, Appellant,

v.

BRANIFF INTERNATIONAL AIRWAYS and the City of Kansas City, Missouri, Respondents.

No. 46958.

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

John M. Cleary, Kansas City, for appellant.

Harold T. VanDyke, Kansas City, Davis, Thomson, VanDyke & Fairchild, Kansas City, of counsel, for respondent Braniff International Airways.

Thomas J. Conway, Jr., Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., for respondent.

STOCKARD, Commissioner.

In her suit for $15,000 damages for the wrongful death of her husband, William H. Atcheson, plaintiff has appealed from the judgment entered in favor of Braniff International Airways (hereafter referred to as "Braniff") and the City of Kansas City after the trial court sustained the respective motions of each defendant for a directed verdict at the end of plaintiff's evidence.

On August 14, 1956, Mr. Atcheson boarded a two-engine Convair passenger airplane at Tulsa, Oklahoma, to travel on what is termed flight 392 via Kansas City, Missouri, to Minneapolis. He was an experienced commercial airline traveler and had flown into the Kansas City airport many

times. The flight arrived in Kansas City at 2:09 p. m. and the airplane was located at gate 5. It was scheduled to depart at 2:30 p. m. Mr. Atcheson left the airplane at Kansas City, but his reason for doing so and where he went is not known.

Braniff also operated flight 152 from Kansas City to Minneapolis, presumably over a route different from that of flight 392. It was scheduled to depart from gate 7 at 2:20 p. m. The airplane used on this flight was a DC-3 which is a smaller airplane than a Convair and has a different appearance when on the ground. The DC-3 was located more than 200 feet from the Convair and there was another airplane between them.

The passengers for flight 152 had been loaded. The doors of the airplane closed and the engines started. All service personnel were standing near the rear of the airplane except the "agent in charge," a person identified only as Mr. Henderson. He was standing about even with the tip of the left wing but forward of it about 20 or 25 feet. Mr. Henderson had "saluted" the pilot (apparently facing the airplane which resulted in his back being toward the area of gate 7 and the baggage gate) when Mr. Atcheson suddenly ran very fast from gate 7 or the nearby baggage gate directly toward the front of the DC-3 airplane. It appeared to one witness that he may have had his hand raised motioning to the pilot. Mr. Henderson was the person nearest to him, and he "motioned" or "put up his hand" and "yelled" for Mr. Atcheson to stop, and he also "headed toward" him and "ran behind" him in an effort to catch him, but Mr. Atcheson ran past him and directly into the whirling propeller of the DC-3 and was killed. The pilot first saw Mr. Atcheson when he was sixty to seventy feet from the airplane, and he immediately cut the switch to the engines. The propellers were revolving at 800 to 1,000 revolutions per minute, and when the switch is cut they slow or stop only from inertia. At the time Mr. Atcheson ran into the propeller it had slowed

to 300 or 400 revolutions per minute. It is not known if Mr. Atcheson ran from gate 7 or the nearby baggage gate, but when the pilot first saw him he was in direct line with the baggage gate and was running in a straight line. As he ran toward the airplane he was looking toward the pilot and directly toward the propeller.

From photographs admitted into evidence it appears that an enclosed ramp for the travel of passengers to the various gates extends northward from the main terminal building. Gate 5 is nearer to the main building than gate 7, and the baggage gate is still farther north but close to gate 7. Painted on the hard surface of the area where the airplanes are located are well defined yellow lines forming a pathway leading from gate 7 to the place where passengers are to enter an airplane. The line of travel of Mr. Atcheson was outside of this painted pathway.

It was the practice at gate 7 to have a chain suspended across it until the departure of the flight was announced. The chain would then be taken down and the passengers permitted to board the airplane. After the "last call" the chain would again be suspended across the gate. The witness who testified to this practice could not remember specifically whether or not the chain was suspended across gate 7 after the passengers were loaded on the day of the accident.

The pilot of the DC-3 made some tests after the accident and found that when revolving at 1,000 revolutions per minute it took the left propeller 15 seconds to stop after the switch was cut, and five seconds for the speed of the propeller to slow to 400 revolutions per minute. For a man to run "slowly" from the baggage gate to the left propeller required seven seconds, and to cover the same distance at a "normal" run required five and one-half seconds. However, Mr. Atcheson was running at a rate faster than "normal."

The Kansas City Municipal Airport is owned by the City of Kansas City, but

there were no city employees nearby or who had anything to do with the preparation for flight of the DC-3 at gate 7.

Appellant introduced evidence to the effect that the public address system in the terminal building is difficult to understand, particularly in the barbershop and the restrooms, and that a whirling propeller, when viewed from certain angles, is difficult to see.

Appellant alleged in her petition that respondents were negligent in failing (a) "to provide a safe place for deplaning and inplaning passengers at the said airport between flights, changing flights, and through flights," (b) failing to provide "adequate safeguarded, protected and marked passageways and walkways for passengers;" and (c) failure to warn the deceased "of his obvious and immediate danger, when both defendants saw or could have seen plaintiff's decedent in a position of great peril to which he was oblivious."

■■■ Appellant's first point is that "the trial court erred in excluding or striking legal, competent, relevant and material testimony offered by the plaintiff." This is insufficient to preserve anything for appellate review. Supreme Court Rule 1.08, 42 V.A.M.S.; Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726; Union Electric Company v. Levin, Mo.App., 304 S.W.2d 478. Both respondents filed a motion to dismiss the appeal, and appellant then filed an amended point as follows: "The trial court erred in excluding or striking legal, competent, relevant and material testimony offered by the plaintiff, to-wit: (a) Evidence was offered and excluded by the trial court that on the day following the accident a new chain was installed across gate 7 to deter passengers and others from going through it and (b) Testimony by an expert witness was also excluded that the practice of persons not employees of the airlines or the station being on the ramp was very lax."

Supreme Court Rule 1.08(a) provides that the points in a brief "shall show what

actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citation of authorities thereunder." See also paragraph (d) of the Rule. The amended point does not in any way purport to show wherein and why the rulings were erroneous. The factual situation here clearly demonstrates not only the purpose but the soundness of the above requirements of the Rule.

■■■ As to part (a) of the amended point, appellant's witness Espinosa testified concerning the practice of suspending a chain across gate 7 after the passengers were loaded. Appellant's counsel then started to ask him about something that happened on the day following the accident and the court sustained an objection thereto on the ground that anything that happened on the day following the accident was inadmissible. Appellant's counsel then stated that he intended to show that on the day after the accident "a chain was installed at gate 7 which had not existed before." "[I]t is the general rule that, where a dangerous, defective, or improper place, method, or appliance is alleged to have resulted in an injury for which damages are sought to be recovered, evidence that, subsequent to the accident or injury complained of, changes or repairs thereof or thereto were made by the person charged or precautions to prevent recurrence of injury were taken by him, is inadmissible to show antecedent negligence or as an admission of negligence on the particular occasion in question * * * but such evidence may be admissible for other purposes, * * *." 65 C.J.S. Negligence § 225a; Hickey v. Kansas City Southern Railroad Company, Mo.Sup., 290 S.W.2d 58; Brule v. Mayflower Apartments Co., Mo.App., 113 S.W.2d 1058. If the offered testimony was admissible for "other purposes" appellant has not attempted to state in her amended point, or even in her argument, what they are or why the offered testimony was not subject to the above general rule. Under such circumstances it is not incumbent upon the respondents to

show why the testimony was not admissible for any purpose, and it is not the duty of this court to search for some purpose, not advanced by appellant, for which it might have been admissible.

■ The same situation exists as to part (b) of the amended point. Charles Dennis Daily, a former manager of the Kansas City Airport, testified that "The condition at Municipal Airport has been very lax." The trial court then struck out this opinion upon request of respondents. The only reason, if it may be called that, advanced by appellant in the argument why this testimony was admissible is that "the witness had been qualified as an expert upon such matters and his opinion as an expert witness was admissible." But assuming this witness was qualified as an expert on such matters, which we doubt, and also assuming that such an opinion could be admissible, which we do not rule, "The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force and 'The question whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for this court' * * *." Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W. 2d 844, 849; Craddock v. Greenberg Mercantile, Inc., Mo.Sup., 297·S.W.2d 541, 548. The record is totally devoid of any facts upon which this supposed expert opinion was based, and appellant has set forth no valid reason whatever why the trial court erred in striking out this opinion. Appellant's first point as amended, in addition to being deficient, is without merit.

■ Appellant next contends that she made a submissible case of negligence, and that the trial court erred in directing a verdict for respondents. In determining this issue we shall not consider the testimony previously referred to which the trial court either struck out or rejected, but we shall consider the evidence which is favorable to appellant as true and give her the benefit of every inference of fact which can reasonably be drawn therefrom. McVicar v. W. R. Arthur & Company, Mo. Sup., 312 S.W.2d 805, 65 A.L.R.2d 785. But of course, in doing this, we can neither supply evidence nor use the above principle as a basis for unreasonable speculative or forced inferences. Hunter v. Karchmer, Mo.App., 285 S.W.2d 918.

■ To constitute actionable negligence there must exist the three following essential elements: (1) A duty which the defendant is under to protect the plaintiff from an injury; (2) a failure to perform that duty; and (3) injury to plaintiff resulting from that failure. Schaefer v. Accardi, Mo.Sup., 315 S.W.2d 230, 233; Zuber v. Clarkson Construction Company, Mo.Sup., 315 S.W.2d 727, 733; Eddy v. Missouri Public Service Company, Mo.App., 309 S.W. 2d 4, 9. Respondent Braniff is a commercial airline carrying passengers for hire, and while it is a common carrier it is not an insurer of the safety of its passengers. Cudney v. Midcontinent Airlines, 363 Mo. 922, 254 S.W.2d 662. Its duty to Mr. Atcheson, as a passenger, was to exercise the highest degree of practical care and diligence consistent with the mode of transportation and the normal prosecution of its business. 6 Am.Jur., Aviation, § 51; 10 Am.Jur., Carriers, § 1245 at p. 166; Reuter v. Eastern Air Lines, Inc., 5 Cir., 226 F.2d 443; Kamienski v. Bluebird Air Service, Inc., 321 Ill.App. 340, 53 N.E.2d 131; Wilson and Anderson, Liability of Air Carriers, 13 J.Air Law 281, 285; Annotations, 83 A.L.R. 359, 99 A.L.R. 190, and 61 A.L.R.2d 1113. But, a carrier is not bound to anticipate unusual and unexpected perils to its passengers. Rhyne, Aviation Accident Law, p. 55. Respondent City of Kansas City owned and operated the airport as a proprietary function, as distinguished from governmental, and to those properly on the premises it owed the duty of exercising ordinary care to keep the premises in a reasonably safe condition. Behnke v. City of Moberly, Mo.App., 243 S.W.2d 549. We shall assume that Mr.

Atcheson temporarily left the Convair airplane without objection from Braniff for some reasonable and usual purpose and thereby did not lose his relation to Braniff of a passenger. 10 Am.Jur., Carriers, § 1011.

■■■■. Appellant first alleged in her petition that respondents were negligent in that they failed to provide "a safe place for deplaning and inplaning passengers," and failed to provide "adequate safeguarded, protected and marked passageways and walkways for passengers." We have examined carefully appellant's brief and we find no reference there to evidence which is contended to support these allegations, and our study of the transcript discloses none. On the contrary, the evidence shows a well lighted passenger ramp with clearly marked gates and walkways to the place to enter the airplanes. There is no evidence from which it may be inferred that there were any places where passengers were authorized to be which were inherently dangerous. There is no question but that a carrier by air has the duty to provide a reasonably safe means for passengers to board its aircraft, Weller v. Northwest Airlines, Inc., 239 Minn. 298, 58 N.W. 2d 739; Annotation, 61 A.L.R.2d 1113 at p. 1117, and for disembarking of passengers, Reuter v. Eastern Air Lines, Inc., supra; Haldane v. Alaska Airlines, Inc., D.C., 126 F.Supp. 224, including a safe method or way of passage to and from the airplane to the terminal area for passengers. Curtiss-Wright Flying Service, Inc. v. Williamson, Tex.Civ.App., 51 S.W. 2d 1047; Annotations, 99 A.L.R. 190 and 61 A.L.R.2d 1114. But in this case there is no evidence whatever that the facilities and means provided for the use of passengers were not safe and adequate, and in addition the evidence conclusively establishes that Mr. Atcheson did not use the provided facilities in the manner intended, but that he ran onto the field where he, as a passenger, was not supposed to go and where he, in the exercise of ordinary care, would have no reason to believe he had

a right to go. We must and do conclude that, as a matter of law, the evidence does not authorize a finding that either respondent breached a duty owed to Mr. Atcheson in either of the first two respects alleged in the petition.

Appellant also alleged that both respondents were negligent in failing to warn Mr. Atcheson of his obvious and immediate danger, when both saw or could have seen him in a position of great peril to which he was oblivious.

■■ The evidence clearly establishes that there were no agents or employees of the City of Kansas City nearby, and there is no evidence from which it can reasonably be inferred that there should have been. Therefore, in so far as it appears from the evidence, there was no agent or employee of Kansas City who saw or should have seen Mr. Atcheson in a position of peril. Under these circumstances there could have been no breach of duty to warn on the part of Kansas City, and we so rule.

■■ Mr. Henderson and the pilot of the DC-3 airplane were the only employees of Braniff who were close enough to Mr. Atcheson after he started running onto the field to warn him or do anything to prevent him from running into the whirling propeller. But, appellant's evidence establishes that when the pilot first saw Mr. Atcheson he immediately cut the switch on the engines, which, by reason of his location in the cockpit of the airplane, was the most he possibly could have done to warn Mr. Atcheson or prevent injury to him, and that Mr. Henderson "motioned" and "yelled" to him to stop, and ran after him in an effort to stop him. There is no evidence from which it possibly could be inferred that in the exercise of the highest degree of care Mr. Henderson or the pilot could have taken any more effective action than they did after they saw Mr. Atcheson.

This leaves only the questions of whether Braniff, in the exercise of the required de-

gree of care, should have anticipated that Mr. Atcheson, or someone else, would run into a prohibited and obviously dangerous area on the field after an airplane had been readied for flight and the engines started, and for that reason should have required Mr. Henderson or the pilot, or someone else, to maintain a constant lookout for such person.

▮ A carrier, by air or otherwise, is not required to anticipate every possible action of passengers or other persons, and it need not anticipate abnormal casualties not reasonably to be expected to occur. Kasanof v. Embry-Riddle Co., 157 Fla. 677, 26 So.2d 889; 6 Am.Jur., Aviation, § 51. A carrier has the right to assume, in the absence of some circumstance constituting notice to the contrary, that in the use of the premises a passenger will exercise ordinary care under all the circumstances and not expose himself to needless danger or ignore the obvious hazards of a particular situation, 10 Am.Jur., Carriers, § 1523, because the passenger is required to exercise ordinary care for his own safety. Young v. Kansas City Public Service Co., Mo.Sup., 270 S.W.2d 788; Moutria v. East St. Louis Ry. Co., Mo.App., 76 S.W.2d 427. There is no duty on a carrier to guide or lead an adult passenger to and from the waiting area when nothing exists to indicate an unusual condition requiring such guidance. Pere Marquette Railroad Company v. Strange, 171 Ind. 160, 84 N.E. 819, 85 N.E. 1026, 20 L.R.A.,N.S., 1041; Annotation, 20 L.R.A.,N.S., 1041, and in this case there was no evidence which would authorize a finding that Braniff should have believed that Mr. Atcheson needed guidance or that some other protective measures would be necessary to prevent him from running into an obviously dangerous area. Therefore, we necessarily conclude that Braniff could not reasonably be required to anticipate the unusual and obviously abnormal situation of an experienced adult commercial air traveller, without any form of an invitation, running from the passenger ramp onto the field in what apparently was an effort to stop the airplane from taking off. For this reason there is no evidence from which it could be found that the employees of Braniff should have seen Mr. Atcheson earlier than they did, and there is no evidence that they could have done more than they did after they saw him to protect him from injury. We must and do conclude that the evidence is insufficient, as a matter of law, to authorize a finding, under the circumstances, that there was any breach of duty on the part of Braniff to warn Mr. Atcheson.

Appellant has cited but two cases of appellate courts pertaining to actions for negligence. In Winer v. Eastern Airlines, Inc., 330 Mass. 337, 113 N.E.2d 859, 860, 40 A.L.R.2d 806, the court considered only the question of the sufficiency of a petition which alleged that the airline "negligently allowed insufficient time for the plaintiff to transfer from Idlewild Field * * * to La Guardia Field * * *," and that "as a result of * * * allowing insufficient time for said transfer, the plaintiff * * * tripped and caused herself serious and permanent injury." In Brown v. American Airlines, Inc., 5 Cir., 244 F.2d 128, 130, 61 A.L.R.2d 1108, the other case cited, a woman tripped and fell as she stepped through the door of the airplane onto platform steps with "a substantial drop off" without a warning of the condition by two attending hostesses. Obviously, these two cases lend no support to appellant's position in this case.

Our research has disclosed the following cases in which a passenger was struck by a revolving propeller. Curtiss-Wright Flying Service v. Williamson, Tex.Civ.App., 51 S.W.2d 1047; Stewart v. Loughman, 367 Pa. 486, 80 A.2d 715; Cape Charles Flying Service, Inc. v. Nottingham, 187 Va. 444, 47 S.E.2d 540. Each involved the situation where the pilot of the airplane permitted the engines to run after landing without warning of their danger or safeguarding them and a passenger thereon was killed or injured when he came in contact with the revolving propeller in the process of getting

out of and leaving the airplane. In Strong v. Chronicle Publishing Co., 34 Cal.App.2d 335, 93 P.2d 649, a newsboy, rightfully in the area as an invitee, walked into the idling propeller of an airplane which had stopped on a totally dark airfield to deliver the papers to the airport. Liability was based on failure to warn of the danger of the propeller. Three trial court cases involved the circumstance of the engine or engines being left running when passengers were alighting. Berg v. Seitz (Kan.), 1931 U. S. Av. 111; Hamilton v. O'Toole (Mass.), 1930 U. S. Av. 133; Hough v. Curtiss Flying Service, Inc. (Me.), 1929 U. S. Av. 99. In all three the operator was found to be negligent, but in the last two cases the passenger was also held to be negligent as a matter of law. Two cases involve employees who were struck by a revolving propeller. Spartan Aircraft Co. v. Jamison, 181 Okl. 645, 75 P.2d 1096; Moon v. Lewis, 116 N.J.L. 521, 185 A. 12. We have studied carefully each of these cases, but the factual situations are so different that other than for the pronouncement of general principles they are of no particular help in determining the issues in this case.

Both respondents have contended that Mr. Atcheson was contributorily negligent as a matter of law, and while this contention is not disapproved, in view of our conclusion that the evidence does not support a finding of actionable negligence on the part of either respondent, we need not rule thereon.

We overrule the motions of each respondent to dismiss the appeal for failure to comply with Supreme Court Rule 1.08 without further comment.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.